## FLETCHER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 9, Docket 20559.

Circuit Court of Appeals, Second Circuit.

Nov. 5, 1947.

Martin F. Kendrick, Laurence Dovik, and Victor Levine, all of Syracuse, N. Y., for petitioner.

Fred E. Youngman, of Washington D.C., Sewall Key, Acting Asst. Atty.Gen., and George A. Stinson, Sp. Asst. to Atty. Gen., for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal concerns an assessment for deficiency in the income tax of the taxpayer for the year 1941. The question is whether a part of the income from his business as a wholesale and retail seller of gasoline, oil and automobile accessories should be included in his sister's income, or in his. The facts as the Tax Court found them are not in dispute, and the substance of them is as follows. The taxpayer lived in Utica where he owned and conducted the business; he was forty-one years old, was married and had an adopted daughter, aged twelve. He also had two brothers and two sisters; one brother was crippled, the other brother, Vincent, he employed. One sister was married and lived at Dannemora, New York; the other, Helen, lived in Utica with the taxpayer's mother, a woman seventy-one years old in 1941; Helen was unmarried and worked as a secretary for a newspaper at a salary of $1500, which was not enough for herself and her mother and to which the taxpayer added for his mother's support. During the year 1940 he told his sister in his mother's presence that he meant to give her $50,000 and one third of the income of the business; and in July of the following year he and she executed an agreement, creating a partnership between the two on which he relies to escape taxation upon one third of his income.

This agreement recited that he had "transferred" $50,000 to her "out of the capital account" of the business—$181,323.-35 in all—and had "set upon the books of the company" a capital account of $50,000 in her name. He "confirmed" this transfer; declared her to be "the unqualified owner" of that much of the "capital stock"; that the gift was "evidenced by the transfer upon the books"; and that the amount of her interest in the capital should not be affected by any profits or losses of the business. The taxpayer was to be "general manager" and "the net profits from operations of the company shall be divided" two thirds to him, one third to her. The credit to the account of each partner was to be "subject to withdrawal in cash at such time as the cash position of the company warrants the same" as to which his decision "will be final." He reserved a pre-emptive right, if she should wish to sell, to buy her out at $50,000, plus anything to her credit on the books and her share of any uncredited profits. It appeared that in 1941 she drew out at least $6500; but she took no part in the management and after July 1, 1941, Vincent had full charge of the retail branch. The taxpayer's motive in all this was in part to enable his sister to provide

for his mother and in part to reduce his taxes. The Tax Court thought the situation fell within the decisions in Commissioner v. Tower,[a] and Lusthaus v. Commissioner,[b] and held that the whole income of the business should be included in the brother's return.

█ If a taxpayer goes through the form of conveying property to his wife, or child, or parent, or sister or anyone else, with the understanding that the grantee shall hold it at the grantor's pleasure and shall give it back on demand, there has been no transfer at all, any more than if it were made as a jest. It is always possible to prove, no matter what documents the parties may have executed, that they have covertly agreed upon a substitute, although it must be owned that courts have at times supposed the contrary. If Tower's case and Lusthaus's case had concerned situations of that kind, they would have presented only commonplace attempts to defraud the Treasury by setting up false screens. We do not understand that the court so regarded the transactions, although the opinion speaks of the articles as not forming "a real partnership," 327 U.S. p. 287, 66 S.Ct. 536; that "no partnership really exists and that earnings are really his," 327 U.S. p. 289, 66 S.Ct. 537; that "the wife was not really a partner," 327 U.S. p. 289, 66 S.Ct. 537; that the Tax Court is not to "shut its eyes to the realities of tax avoidance schemes," 327 U.S. p. 289, 66 S.Ct. 537; and that the issue is whether the spouses "really intended * * * a partnership," 327 U.S. p. 289, 66 S.Ct. 537. Nevertheless, we do not read this use of the words "real," "really" and "realities," as meaning that as between the parties the papers did not measure the enforceable rights and liabilities. A partnership may be "real" in that sense, but "unreal" when it comes to taxing the partners; the question in such cases is what circumstances deprive it of this kind of "reality." As we understand it, there are four conditions whose combined existence will make such a partnership "unreal" when taxes are in question : (1) If the grantee's contribution to the firm capital is a gift of the grantor; (2) if the grantor and the grantee are spouses; (3) if the grantor retains control over the management of the business; (4) if he makes the gift and sets up the firm to avoid taxation. It is true that only Rutledge, J., held that these were constitutive facts as such; and the majority merely held that they provided a basis for a finding by the Tax Court; but the difference is unimportant here, for this appeal too is from the Tax Court.

In all such situations a reserved power to manage the property transferred has been regarded as significant because it is so important a part of those powers and interests which, taken as a whole, make up the right of "property." Its retention by the grantor goes far to keep the "property" in him, even in cases where he has finally transferred all beneficial enjoyment. For example, in the analogous situation of a "family trust," this has always counted for much.[c] Moreover, even as to those interests which do pass from the grantor beyond reclaim, it has been thought relevant that spouses are likely to be in such a harmonious relation to each other that the wife is not likely to exert her legal power in opposition to her husband's will. Why the motive to escape taxation should be thought relevant, is not so plain; especially since the court usually adds, as it did here, that a man may in general arrange his affairs to keep down his taxes. Conceivably the reason for its relevancy in this situation it that, if the wife supposes the gift and the partnership to be an unmixed benefaction, she may be less disposed to be complaisant with her husband's wishes, than if she knows that they were, in part at least, a device to save his own money. The distinction seems a little tenuous, it must be owned; we suggest it only because it has been often said that all that counts is the degree of control retained over the income, and we can think of no other rational bearing upon that which the husband's motive can have.

█ These are concededly innovations in the notion of property as it is ordinarily

a 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135.

b 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679.

c Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

understood; indeed the court frankly avows that it does not read the statute as fitting upon the existing pattern of legal concepts at all; but as carrying implicitly glosses, appropriate to the policy of the act as a whole. Since we do not have the last word in deciding how far Congress used its words in this esoteric sense, we cannot be sure how literally a new set of facts must conform to those which have been adjudicated. Nevertheless, after all allowance has been made, and after attempting as best we can to divine the underlying principles, it does seem to us that the fact that here the grantor and grantee were brother and sister, instead of husband and wife, should not be crucial. The taxpayer at bar reserved complete management of the business, and it was scarcely more likely that his sister would assert her rights against his will than if she had been his wife. His motives were no less to avoid taxation than was inevitable, if the gift was not to be a sham; for, as we have said, when the grantor does not part with all beneficial interest, there is really no problem. Moreover, there are further reasons here for this result in the added powers of control reserved to the grantor. His sister could not withdraw a dollar without his assent; and he had a pre-emptive right to buy her out at the amount of his original gift, no matter what the value of her interest might be.

Order affirmed.