## T. Edward Ritter, Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 13133.   Promulgated August 31, 1948.

*C. F. Rothenburg, Esq.*, for the petitioner.
*Paul E. Waring, Esq.*, for the respondent.

236

OPINION.

HARLAN, *Judge*: Petitioner contends that the $9,000 contribution of Harold to the partnership was his own capital, since the father

had promised his son before entering college in 1938 that if the son completed his engineering course the father would take him into partnership, and, since the boy did complete his engineering course, petitioner argues he was entitled to the $9,000 and the partnership status as a fulfillment of the father's contractual obligation.

Our failure to find as a fact the existence of the contract is not a reflection on the effort and intention of the taxpayer herein to give a truthful narration. Nine years have elapsed since the occurrence of the conversation between the father and son and the time the father testified. The shades of difference between words which merely denote a future intent of the speaker and those words which contractually bind the speaker to perform some future act are frequently so slight that memory, especially when unconsciously stimulated by the self-interest of the witness, might cause him to recall the conversation with slight inaccuracies. For example, in 1938 the father might well have told the son that *when* he graduated the father *expected* to take him into partnership. However, in 1947, at the time of the trial, the father's memory of that conversation might well be as he testified, i. e., that "if the son graduated he *would* take him into partnership." It is well recognized that any interfamily contractual relationship which results in a reduction in tax liability must be subjected to special scrutiny. *Helvering* v. *Clifford*, 309 U. S. 331. We are not persuaded that the father in this case has established a contractual relationship between himself and his son pertaining to the son's college course.

However, assuming the reliability of the memory of the witness, the alleged contractual offer did not provide for the payment to the son of the $9,000 which was transferred to him in 1942, nor for any other specific amount, and the contract, if it existed, so far as any payment of money is concerned, is too indefinite to be enforceable.

Furthermore, apparently neither the father nor the son, in 1942 at the time the payment to the son was made, considered the $9,000 to be in satisfaction of a contractual obligation. Both the father and the son reported the transaction to the Bureau of Internal Revenue as a gift. It is therefore our conclusion that the son did not contribute new capital of his own to the partnership.

It is also clear that during the entire year of 1943 Harold was with the military forces and rendered no service to the partnership, vital or otherwise.

It is far from clear also as to whether Harold ever received any income from the partnership for the taxable year involved, except a disbursement which the partnership made to pay Harold's income tax on the distributive share which he certainly did not get during that year, if ever. This share was kept in the partnership capital and entered to the credit of Harold. However, it remained in the partner-

ship until its liquidation. As to the manner in which it was included in the corporation assets, the record does not show. In the corporation the father and the two sons held the same proportionate amount of stock as the father, Harold, and Marion had held in the partnership. We know that Harold and Marion withdrew nothing from the partnership for the three years 1943, 1944, and 1945. We also know that the father made substantial withdrawals during 1943 and the first half of 1944, but the record is silent as to what he withdrew in the last half of 1944 or during 1945. Therefore, with the income of Harold and Marion, as trustee for Kenneth, remaining in the business while the father withdrew an undetermined amount from the business, it would seem that when the corporation was organized, with the two boys having exactly the same share in the corporation that they had in the partnership, they at least failed to get their proportionate income from the partnership, if they got anything at all. Furthermore, during the taxable year and the two succeeding years all of the income of the two boys, except sufficient thereof to pay the income taxes of the boys, remained in the partnership and was administered by the father in the same manner as he had administered his business under individual proprietorship. During this time the father also signed contracts as an individual. He says this was because his son was in the Army and his signature could not easily be obtained. Whatever the reason, the contracts were individual contracts of the same character as those entered into by the father when he was in business for himself.

Petitioner, however, contends that, since he and Harold intended to enter into a bona fide partnership in December of 1941, and since that intention was thwarted by the requirements of the war, the partnership should be recognized for income tax purposes. The petitioner quotes from the decision in *Commissioner* v. *Tower*, 322 U. S. 280:

> When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their "agreement, considered as a whole, and by their conduct in execution of its provisions."

Petitioner also quotes the same words from *Wilson* v. *Commissioner*, 161 Fed. (2d) 661.

The petitioner argues that the record is clear that ever since 1936 he and his son Harold had established a definite intention to form a bona fide partnership and that when the partnership so intended is formed it should be recognized for income tax purposes. It seems obvious to us that the "intention" to which the cited authorities refer

is one pertaining to the taxable year under consideration by the Court. The Court is not discussing an intention to form a partnership at some indefinite future year. The intent discussed refers to the intention of the parties at the time the partnership agreement is entered into.

The case before us is not one where the partnership, after being actually formed and after functioning for a part of the taxable year, was prevented from operating throughout the year by the taking of one of the partners into the military service. In the case at bar Harold had been in the armed forces for six months prior to signing the partnership agreement. When he signed that agreement, providing that he should give his "entire time and attention to said business," both he and his father knew that the performance of the agreement would be impossible. See *M. M. Monroe*, 7 T. C. 278.

Petitioner relies heavily upon a recent decision of the Fifth Circuit Court of Appeals in which the Tax Court was reversed. *Culbertson v. Commissioner*, 168 Fed. (2d) 979. In that case Culbertson, Sr., was in partnership with one Coon. Culbertson had four sons in whom Coon had exhibited interest to the extent that he had provided financially for their education. The partnership for many years had been engaged in breeding and feeding cattle. Coon was particularly interested in a fine strain of Hereford cattle which he had developed through the years. In 1939 Coon's health failed and it was decided to liquidate the partnership. Culbertson offered Coon a price for Coon's share of the registered cattle. Coon agreed to accept Culbertson's offer, provided Culbertson would sell the cattle to his four sons on credit and take the four sons into the partnership with him.

These boys had each worked on the ranch, beginning at twelve years of age, and Coon realized that they would be able to carry on his herd and preserve the high quality of the breeding. Culbertson accepted Coon's proposition and entered into a partnership with his sons, Culbertson contributing his half interest in the cattle and the sons giving the father promissory notes for their shares. Subsequently, the father was largely repaid on the notes from the sale of partnership assets and the balance remaining due the father was canceled. The partnership was formed in October 1939. The tax years involved were 1940 and 1941. The World War in 1941 took all of the boys into the military service. The Commissioner determined that the entire income from the Culbertson family partnership was taxable to the father.

A number of important distinctions are obvious between the *Culbertson* case and the one at bar. In the cited case the sons had actively worked on their father's ranch for a number of years prior to the for-

mation of the partnership. They worked for the partnership from October 1939 until the undesignated day when they were called to military service. They performed vital services in preserving the registered Hereford herd. By the very act of going into the partnership the sons contributed to the partnership capital by procuring from Coon a reduced price on the Hereford cattle.

The opinion in the *Culbertson* case contains some broad generalities on the question of intent, such as the following:

> It was the purpose and intent of all the parties to form an actual, real and bona fide partnership between Culbertson and his four sons, with the full expectation and purpose that the boys would, in the future, contribute their time and services to the partnership. We do not consider that it is illegal, income-tax-wise or otherwise, for a partnership to be formed in consideration or contemplation, of services rendered, or to be rendered, by the partners.

The petitioner has applied the above quotation to the facts in the case at bar. We doubt very much if the Circuit Court ever intended its words to have such a broad application. However, it is not necessary for us to discuss this point, because of the clear factual distinctions between the *Culbertson* case and the case at bar.

It is our conclusion that in the taxable year the income from the family partnership of petitioner's family should be taxed to the petitioner.

*Decision will be entered for the respondent.*