## RITTER v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5847.

United States Court of Appeals
Fourth Circuit.

Argued April 14, 1949.
Decided May 11, 1949.

C. F. Rothenburg, Washington, D. C. (Charles D. Hamel, F. C. Niswander, and Hamel, Park & Saunders, Washington, D. C., on brief), for petitioner.

Irving I. Axelrad, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack, Special Assistant to the Attorney General, on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Here is another appeal involving the familiar pattern of a family partnership. The Tax Court of the United States held Edward Ritter, the petitioner-taxpayer, also the donor-father, liable for income taxes for the year 1943 upon the income from the share of a partnership given by Edward Ritter to Harold Ritter, the donee and son of petitioner. The basis of this holding by the Tax Court was that the transfer of the partnership interest by the father to the son lacked economic reality, since the son contributed no capital to the partnership and no services during the tax year. The opinion of the Tax Court is reported at 11 T.C. 234.

In Moore v. Commissioner, 4 Cir., 170 F.2d 191, we said: "The law in this field is well settled by numerous decisions. Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. The doctrine laid down by these two cases in the Supreme Court has been sedulously followed by our Court. Hash v. Commissioner, 4 Cir., 152 F.2d 722, certiorari denied 328 U.S. 838, 66 S. Ct. 1013, 90 L.Ed. 1614; Mauldin v. Commissioner, 4 Cir., 155 F.2d 666; Wilson v. Commissioner, 4 Cir., 161 F.2d 556, certiorari denied 332 U.S. 769, 68 S.Ct. 80 [92 L.Ed. 354]; Economos v. Commissioner, 4 Cir., 167 F.2d 165, certiorari denied [335 U.S. 826], 69 S.Ct. 53. A similar result has been reached by numerous other federal courts. See, for example, Fletcher v. Commissioner, 2 Cir., 164 F.2d 182, certiorari denied 333 U.S. 855, 68 S.Ct. 733; Davis v. Commissioner, 3 Cir., 161 F.2d 361; Scherf v. Commissioner, 5 Cir., 161 F.2d 495, certiorari denied 332 U.S. 810, 68 S.Ct. 111 [92 L.Ed. 387]; Tinkoff v. Commissioner, 7 Cir., 120 F.2d 564; Nordling v. Commissioner, 9 Cir., 166 F.2d 703; Grant v. Commissioner, 10 Cir., 150 F.2d 915. In the face of this array of judicial authority, we are not impressed by some expressions to the contrary contained in the opinion of Circuit Judge Waller in Culbertson v. Commissioner, 5 Cir., 168 F.2d 979. The Government has petitioned the Supreme Court for certiorari in the Culbertson case, and there are factual differences between the Culbertson case [335 U.S. 883, 69 S.Ct. 235] and the instant case."

At the time the partnership articles were signed, Harold was in the armed services of the United States, in World War II, so it is quite clear that he and his father could not have contemplated that Harold would (or could) render any services to the partnership during 1943. As a fact, in that year, he rendered no services whatever to the partnership. Harold's pecuniary contribution to the partnership, $9,000, was a gift from his father who paid a gift tax upon it. It is thus clear that Harold contributed neither capital nor services to the partnership during the tax year 1943. So we have the same pattern here found in the long line of cases we cited in the Moore case, supra. Accordingly, we must uphold the Tax Court's decision.

After the execution of the partnership agreement there was no change whatever in the operation of the business during 1943. There was even evidence that important contracts were signed "T. E. Ritter," and that in a letter preliminary to another important contract, petitioner signed his name "T. E. Ritter" on a line under which was written "Thomas Edward Ritter, an individual trading as T. E. Ritter Company."

We think it is quite unnecessary to add materially to what has been said by the Tax Court in its opinion and findings of fact. So we confine ourselves to a brief discussion of one feature of the instant case which, counsel for petitioner asserts, sets it off and distinguishes it from the Moore case, supra, and the cases therein cited.

Petitioner claims that he had long entertained the idea of associating with him in his contracting business his two sons, Harold and Kenneth. When Harold was 17 years old, petitioner procured employment for Harold with a contractor. This, we are told, was done with the idea of testing Harold's aptitude for the contracting business.

There is a further claim by petitioner that he agreed with Harold that if Harold would graduate from an engineering college, petitioner would take him into partnership. Harold in 1938 entered the Virginia Polytechnic Institute and graduated therefrom in June, 1942, and almost immediately thereafter entered the military service of the United States. When Harold was on furlough in the Autumn of 1942, he expressed his desire to become a partner with his father, and when Harold returned again on a furlough over the Christmas holidays in 1942, the partnership agreement was duly drawn up and signed.

On these facts, we are told, that here was manifested a clear intention that Harold was, in the actual contemplation of the parties, to become an active and real partner with his father in every practical connotation of that term. And, accordingly, it is urged upon us, this distinguishes (and thereby renders inapplicable) the Moore case and cases therein cited, for in those cases it was never really contemplated that an actual partnership would ever be brought into being, even in the dim and distant future.

The Tax Court declined to find that there was an enforceable contract between father and son and pointed out that there was no provision in the alleged contract requiring the father to give $9,000 to the son as the latter's contribution to the partnership.

But whatever may have been the intention of father and son, and whatever may have been in their contemplation as to the future, it is crystal clear that neither thought (when the partnership agreement was signed) that the son would contribute anything to the partnership, either capital or services, during the tax year 1943, and that is what concerns us here. When Harold, then in the armed services, agreed in the articles of partnership to devote his "entire time and attention to said business," this was something less than a brutum fulmen.

We agree with the Tax Court that for the taxable year 1943, the income allotted to Harold under this family partnership should be taxed to the petitioner. Accordingly, we must affirm the Tax Court's decision.

Affirmed.