W. STANLEY BARRETT, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17356. Promulgated October 10, 1949.

540

*Andrew P. Quinn, Esq.*, for the petitioner.
*Paul P. Lipton, Esq.*, for the respondent.

## OPINION.

Murdock, *Judge*: The Supreme Court has said that in cases like this all of the surrounding circumstances must be examined in order to determine "whether the partners really and truly intended to join together for the purpose of carrying on a business and sharing in the profits or losses or both." *Commissioner* v. *Tower*, 327 U. S. 280, 286. See also *Lusthaus* v. *Commissioner*, 327 U. S. 293; *Commissioner* v. *Culbertson*, 337 U. S. 733. The Court in the *Tower* case said that a wife could become a partner for tax purposes with her husband "if she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services or does all of these things." The petitioner concedes that his wife did not contribute in any degree to the control and management of the business and did not otherwise perform vital services. She took no part in the partnership activities. The petitioner bases his case entirely upon the proposition that his wife contributed $35,000 of her own money to the business in 1935 and, therefore, is entitled to her share of the partnership profits in accordance with the partnership agreement dated July 1, 1935, with the result that no part of those profits is taxable to him. The Supreme Court, in the *Culbertson* case, stated that the "isolation of 'original capital' as an essential of membership in a family partnership also indicates an erroneous reading of the *Tower* opinion." An effort has been made herein to give consideration not only to the question of whether or not the wife contributed "original capital," but also to all of the various facts and circumstances which might shed any light upon the intent of the parties. However, the petitioner's contention will be discussed first.

He contends that his wife loaned him the proceeds of the sale of her real estate, with the understanding that he would repay her, and he transferred to her in 1935, in settlement of that debt, $35,000, which she then invested in a one-fourth interest in the partnership. The

evidence in support of this contention is somewhat vague and uncertain at several critical points and also contains contradictions, with the result that the Court has been unable to make a finding that the wife contributed any "original capital" to the business.

The money which the petitioner claims his wife loaned him came from the sale of their home in November 1929. The petitioner purchased a lot in 1925 and built a house on it. He and his wife occupied that house as their home until it was sold in 1928, at which time other land was obtained and a new house was built, which was or was to be their home. There were mortgages on each home, but, aside from the mortgages, the petitioner invested about $30,500 of his own money in the properties. He, rather than his wife, was the active person in obtaining the properties, applying for the loans, and building the houses. The second home was to cost about $72,000, but not all of that amount had been paid in November 1929. The petitioner had placed the title to each of these homes in his wife's name. He said he did that for the purpose of giving her some security in case something happened to his business, but he also testified that it was his policy to put all of his property, aside from the partnership property, in his wife's name. A partnership, of which the petitioner was a member, had pledged securities belonging to a customer for a debt of the firm and, in November 1929, had to have $13,000 immediately to redeem those securities in order to return them to their owner. The petitioner requested his wife to sell their new home in order to obtain the needed funds. The new home was sold and about $23,500 was realized from the sale. The petitioner's wife received a che᷍. for that amount on November 14, 1929. She immediately turned over $13,000 to the petitioner, who contributed it to the capital of the partnership and the partnership used that money to redeem the pledged securities. The wife later transferred the remaining $10,500 to the petitioner to enable him to pay off some personal indebtedness. An adjoining lot was sold in 1930 for $7,500 and the wife transferred that amount immediately to the petitioner to enable him to pay off additional personal indebtedness. Thus, the petitioner received about $31,000 from the proceeds of the sales of property standing in his wife's name, in which properties, beginning in 1928, he had invested about that much of his own money.

The petitioner, with some leading from his attorney, referred to those transactions as loans from his wife. He was asked by that attorney to give the substance of any conversation he had had with his wife at or about the time the money was turned over to him, and he replied, "That is so many years ago, the only recollection I have was that in the talks I expected to pay the money back." His attorney

then said, "I am going to ask you once more about that, Mr. Barrett. Will you please tell us, as best you can, the substance of what you told Mrs. Barrett about those various loans and the repayment, if there was any talk about them?" His answer was, "When I was financially able I would repay the loans." They had no notes or other written evidence of any indebtedness existing between them. There is no evidence that the wife ever requested the petitioner to repay her any money or to give her an interest in the partnership. Were these home properties in the name of the wife for her benefit, for his, or for mere convenience? Were his statements in 1929 sufficient to create a debt? A debt must be certain and payable unconditionally. Cf. *Gilman* v. *Commissioner*, 53 Fed. (2d) 47, affirming 18 B. T. A. 1277; *Commissioner* v. *Park*, 113 Fed. (2d) 352; *Trimount Dredging Co.* v. *Rhode Island Hospital Trust Co.*, 163 Atl. 625; 53 R. I. 55.

It is not clear whether the new partnership agreement was actually entered into on or about July 1, 1935, at the time the fiscal year of the old three-man partnership terminated, or whether it was entered into in the latter part of December 1935. It is clear, however, that shortly after December 1935, when these events were probably clearer in the petitioner's mind than they are now, he reported that he had made a gift of $35,000 to his wife and had made her a gift of one-half of his capital interest in the partnership. He reaffirmed that position on several subsequent occasions. The position taken by him in his gift tax returns, and subsequently affirmed, that the transfers to his wife in 1935 were gifts, is inconsistent with his present contention that he owed his wife at least $31,000 and was merely repaying her. He says now that his reporting the transfers as a gift was due to confusion and stupidity on his part and he has filed a claim for refund of those taxes. The petitioner apparently was not in position to give his wife a one-fourth interest in the proposed new partnership and retain a one-fourth interest for himself, since he was receiving only one-third of the profits in the existing partnership. It is difficult to understand why his partners were willing to have him bring in his wife, which meant that they would take a smaller share of the profits. Apparently no new capital was needed. Certainly none was brought in by the change.

The record as a whole leaves real doubt as to what happened and does not justify a finding that the petitioner ever owed his wife anything or a finding that she contributed any capital originating with her to the partnership. This destroys the whole foundation of the petitioner's case as he presented it.

The Court has considered other circumstances, including the fact that the Commissioner apparently recognized this partnership as

valid for tax purposes for about six years. The evidence shows that, the old partnership had been increasingly successful for several years up to and including 1935, and the saving of taxes to the petitioner is the only obvious benefit that the petitioner might have expected in taking in his wife as a partner. Her share of the earnings under the agreement for the fiscal year ended June 30, 1936, was $38,021.60, or substantially more than the amount of capital which she is supposed to have contributed, the contribution of which is said to entitle her to a share of the earnings. It is not easy to assume that mere capital could earn so much (cf. *Lucas* v. *Earl*, 281 U. S. 111) or that any such arrangement would have been made except for some ulterior purpose. The record does not show the extent to which capital was an income-producing factor in the business.

The Court has also considered the extent, if any, to which the wife actually controlled or enjoyed profits of the partnership credited to her account, and, here again, the record is not clear. She had no other income and the payment by the partnership of income taxes on her allotted share of partnership income is not very significant. The wife was on the stand and evinced almost no knowledge of the affairs of the partnership. She did not testify that she had ever exercised her own initiative in any way in connection with funds standing in her name on the books of the partnership or had ever withdrawn any money or securities to use as she saw fit. There is some evidence to indicate that her husband decided to make and made a gift to their daughter of some of the securities charged to the wife's account without his wife knowing very much, if anything, about the gift. Also, there is evidence that $5,200 was credited to her account at the end of 1943 as salary, although she did absolutely nothing to earn any salary. These and other circumstances suggest that the petitioner used his wife's name in transactions without any real interest or participation on her part. Of, course, the credits to her account are not significant if others actually earned all of the income. *Helvering* v. *Horst*, 311 U. S. 112.

The evidence as a whole indicates that the petitioner and the other two active partners, using the capital in the business prior to July 1, 1935, and earnings thereafter left in the business, earned the income; the wife made no contribution of capital or services to the business; the wife exercised no control over any of the amounts or securities credited to her on the books of the partnership; and no part of the income of the business for 1942 or 1943 should be recognized as taxable to the wife.

*Decision will be entered for the respondent.*