HERMAN FELDMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18837.   Promulgated January 11, 1950.

*Simon E. Soboloff, Esq.*, and *Eugene M. Feinblatt, Esq.*, for the petitioner.

*E. M. Woolf, Esq.*, for the respondent.

**OPINION.**

OPPER, *Judge*: Although it is clear that no one factual element may suffice to determine the question, *Commissioner* v. *Culbertson*, 337 U. S. 733, our conclusion here from all the circumstances as incorporated in the foregoing ultimate finding of fact is that the parties did not intend in good faith and for a business purpose to conduct the business of Brooks Clothes in partnership with the trust for petitioner's minor son. We recognize, of course, that the contribution of capital originating with a donee is not an essential for a valid partnership, even in the absence of managerial or vital additional services. But the mere legal title to capital acquired by gift is likewise not alone sufficient within the doctrine of the *Culbertson* case.[1] To our mind, that is the sole indication of the existence here of the intention to conduct a business partnership.

As the Supreme Court said in the *Culbertson* case (p. 744):

Unquestionably a court's determination that the services contributed by a partner are not "vital" and that he has not participated in "management and control of the business" or contributed "original capital" has the effect of placing a heavy burden on the taxpayer to show the bona fide intent of the parties to join together as partners. * * *

We take this to mean that in discerning the purpose of the arrangement and whether there exists the necessary intent of "carrying on business in partnership,"[2] Internal Revenue Code, sec. 181, the con-

---

[1] "* * * The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the *Tower* case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." (*Commissioner* v. *Culbertson*, 337 U. S. 733, 742.)

[2] "* * * The partnership sections of the Code are, of course, geared to the sections relating to taxation of individual income, since no tax is imposed upon partnership income as such. To hold that 'individuals carrying on business in partnership' include persons who contribute nothing during the tax period would violate the first principle of income taxation: that income must be taxed to him who earns it. *Lucas* v. *Earl*, 281 U. S. 111 (1930); *Helvering* v. *Clifford*, 309 U. S. 351 (1940); *National Carbide Corp.* v. *Commissioner*, 336 U. S. 422 (1940)." (*Commissioner* v. *Culbertson, supra*, 739–740.)

tribution of needed capital which does not already exist in the business or at the disposal of the partners, the participation in management, or the rendering of vital services, would tend to furnish the evidence of a business purpose and an intent to conduct a business; and that accordingly, the absence of all of these factors places a correspondingly heavy burden upon one who would show that notwithstanding the lack of these elements some other evidence exists from which the requisite intent and business purpose may be gathered. In the case before us we are unable to find that petitioner has sustained that burden or furnished that missing evidence.

The trustee did not perform services for the partnership as trustee which can be segregated from his services in his individual capacity as a partner. *Samuel Friedman*, 10 T. C. 1145. Even laying to one side a possible distinction between the trust which owned the "partnership" interest and its beneficiary, the latter—who was but thirteen at the time the trust was created—performed no services in the years before us which are indicated as being of any real value to the partnership business.

Such effort as there is to demonstrate a "business purpose" is confined entirely to anticipations for the future. But the definite teaching of the *Culbertson* case is that regard must be had to the circumstances in the taxable years and not to some future development for the examination of this phase of partnership situations. "* * * The intent to provide money, goods, labor, or skill sometime in the future can not meet the demands of §§11 and 22 (a) of the Code that he who presently earns the income through his own labor and skill and the utilization of his own capital be taxed therefor. The vagaries of human experience preclude reliance upon even good faith intent as to future conduct as a basis for the present taxation of income." [3] These observations are pointed up by the fact that in 1946, when the son was seventeen years of age, the partnership was dissolved and the business reorganized as a corporation, and that it was not until the following years that the son performed any services which could possibly be regarded as of significance.

Nor do the situations of the parties before and after the so-called partnership, the domination of the business by petitioner, or the aspect of actual earning of the income support petitioner's contentions. See *Economos* v. *Commissioner* (C. C. A., 4th Cir.), 167 Fed. (2d) 165. Whatever capital was donated by petitioner to the trust was in the business before the trust was created. It remained there. The com-

---

[3] At that point there is a footnote reading as follows:

"8. The *reductio ad absurdum* of the theory that children may be partners with their parents before they are capable of being entrusted with the disposition of partnership funds or of contributing substantial services occurred in *Tinkoff* v. *Commissioner*, 120 Fed. (2d) 564, where a taxpayer made his son a partner in his accounting firm the day the son was born."

bined share of the profits allocated to petitioner and to the trust after July 1, 1942, equaled precisely the petitioner's share before that time. The only change was that a part of petitioner's profits was then to be distributed to and retained by the trust.

It is not even suggested in the trust instrument that this transfer was made for any purpose connected with the business. The stated motivation was "to provide an independent estate for my son Samuel Feldman," a personal objective of petitioner which, praiseworthy as it may be, can not have been of benefit even prospectively to the business of Brooks Clothes.

The trust income was to be accumulated throughout the minority of the son. He could not secure any part of it in the meantime, regardless of the value to the business which his services might ultimately assume.

If the son died before he could secure these accumulations, they were to go to the presumable recipients of petitioner's bounty, petitioner's wife and his daughter, unless in the meantime the son made a will. The latter was largely illusory, since in the state of the son's domicile—which we take to be that selected for him by petitioner—the son, being only thirteen at the time, was legally incapable of executing a valid will.[4] Prior to majority he could not will real property,[5] and in many jurisdictions he could not make a valid will.[6] Thus, if petitioner thought it important enough to change the family domicile, or the trustee invested in real estate, destination of the partnership income for the instant tax years would be that selected by petitioner exclusively.

The business was created and apparently brought to its successful position largely through the efforts of petitioner. There is no reason to assume that the establishment of the trust would change this situation. Yet petitioner's designated salary was but $14,560 out of a business which in the years before us earned from $200,000 to over $400,000.

Assuming that capital was a vital income-producing factor, no showing is made of what function that capital performed. No aid is thereby furnished in solving the dilemma that, if the capital transferred to the trust was an essential element of the earning power of the business, the gift could not have anticipated its withdrawal by the

---

[4] See *Holzman* v. *Wager*, 114 Md. 322 ; 79 Atl. 205, 206.

[5] "A is trustee of Blackacre and of certain securities for B, an infant. When nineteen years of age B executes a will devising and bequeathing his interest under the trust to C, and dies during the same year. If an infant has not capacity to devise legal interests in land, but has capacity if he is over eighteen years of age to bequeath legal interests in personal property, the devise of B's interest in Blackacre is void but his bequest of his interest in the securities is valid." *Restatement of Trusts*, 133, *Illustration 3*.

[6] "Under the statutes of many of the states, however, the right to dispose of property by last will is limited to persons of full age, or to those over eighteen years of age." 57 Am. Jur., sec. 54.

trustee, since that would have destroyed or crippled the enterprise; whereas if it was not, no essential contribution was made by the trust. We are not able in the face of these facts to assess the realities of the gift apart from an implied condition that, if it made any contribution, it must remain in the business in which both petitioner and, ultimately, the substituted trustee were large participants. It suffices to say that nothing in the conduct of the parties indicates that anything more was intended by the gift than that a part of petitioner's income should be set aside for the future benefit of his son, or of the other members of his family.

As if to underscore the control which petitioner felt it essential to retain, the "partnership" agreement provided that if a partner withdrew or died, rights to participate in the purchase of the interest thus made available, conferred originally by an earlier partnership agreement, were not to pass to the trust, but were to remain in petitioner. Based upon all of the facts and in the light of the considerations held to be appropriate in cases of this character, we conclude that it was not intended that the trust was to be a bona fide partner in the carrying on of the business and that respondent properly found that the income in question was taxable to petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

KERN, *Judge*, concurring: I concur in the result, in spite of the very slight variances between the facts here present and those existing in other cases involving the question of the validity of a family partnership which reached a different result. The decision of a family partnership case necessitates the consideration and the weighing by the trial judge of many factors. Those factors material to such a decision have been enumerated in the *Culbertson* case. The weight to be given any of those factors must necessarily be a matter for the judicial discretion of the judge presiding over the trial of the case (of course, within limits of reason). In the instant case, the judge writing the majority opinion herein has considered the factors enumerated in the *Culbertson* case as material to the solution of the problem posed. He has accorded weight to the several factors considered in a manner consistent with reason and sound discretion. I, therefore, concur with his ultimate factual conclusion.

---

BLACK, *J.*, dissenting: I am unable to agree with the majority opinion, which holds that the trust for Samuel Feldman, petitioner's minor son, was not a partner in the business partnership known as

Brooks Clothes. The holding that the trust for Samuel Feldman was not a partner is based upon an ultimate finding of fact made by the majority as follows:

The parties did not, acting in good faith and with a business purpose, actually intend that the trust join together with petitioner and his brothers as a partner in carrying on business.

How the majority is able to make such a finding in face of the facts in the record of evidence as disclosed by the findings of fact which immediately precede it, is more than I can see. A trier of facts may not draw inferences which are altogether contrary to the facts proved and have no substantial evidence to support them. To use the language of the United States Court of Appeals for the District of Columbia in the recent case of *Wenig* v. *Commissioner*, 177 Fed. (2d) 62, reversing a memorandum opinion of the Tax Court:

We neither question nor depart from the findings of basic facts as made by the Tax Court. But we think its conclusions are not within the realm of legitimate inference from the record as a whole or from the specific facts found. * * *

Such is my view in the instant case. I have carefully read and examined the findings of fact submitted by Judge Opper, who tried the case, and adopted by the majority, and, with the exception of the ultimate finding to which I have just made reference, these facts seem full and fair. I am unable to find in them a single fact which, in my judgment, justifies the ultimate finding that the parties did not, in good faith, intend to take the trust in as a partner.

What are the facts? Briefly, they are these: Petitioner Herman Feldman and four of his brothers were partners together in a clothing business, and Herman owned a 35 per cent interest therein. He decided in 1942 to give his son Samuel a 13 per cent interest in this business, and he did so through the medium of a trust. The provisions of this trust indenture are incorporated in the findings of fact and they seem to me to show a perfectly valid, irrevocable trust by which petitioner conveyed 13 per cent of his interest in Brooks Clothes to the trustee for the benefit of his son Samuel. Of course, it is true that this conveyance of the 13 per cent interest in Brooks Clothes to the trustee did not make the trust a partner in the business. One can not give a part of his interest in a partnership business to someone else and make that other person a partner in the partnership business, especially where there are other partners involved. They have to be consulted and give their consent before the trust can be made a partner. Therefore, if petitioner had stopped with the conveyance of 13 per cent of his interest to the trust, the trust would not have thereby become a partner and it might well be that petitioner would still be taxable on 35 per cent of the profits of the partnership, even though he would have to account to the trust for 13 per cent of the profits. Cf. *Lucas* v. *Earl*,

281 U. S. 111. But petitioner did not stop there. He and his brothers who were partners in Brooks Clothes got together and agreed to take the trust into the partnership. The findings of fact state:

On July 1, 1942, the six Feldman brothers, petitioner, Jack, Al, Julius, Edward, and Maurice as trustee, executed an agreement stated to be supplemental to the original partnership agreement.

Then follows the supplemental agreement, which, so far as I can see, was a perfectly good legal agreement whereby Maurice, as trustee, was made a member of the partnership. Thereafter the trust was paid its full share of the profits in accordance with the agreement and on October 1, 1946, when the partnership was dissolved and the business was incorporated, stock in the new corporation was received by the trustee for Samuel Feldman in proportion to the trust's interest in the partnership. What more than the foregoing facts would a taxpayer have to prove in order to establish the *bona fides* of a partnership? I am at a loss to know. In holding that petitioner has not met his burden of proof to show the *bona fides* of the partnership, the majority opinion, among other things, says:

Assuming that capital was a vital income-producing factor, no showing is made of what function that capital performed. No aid is thereby furnished in solving the dilemma that, if the capital transferred to the trust was an essential element of the earning power of the business, the gift could not have anticipated its withdrawal by the trustee, since that would have destroyed or crippled the enterprise; whereas if it was not, no essential contribution was made by the trust. * * *

Just what is meant by the foregoing language is difficult for me to understand. If by it is meant that a trustee of a trust which has received a conveyance of an interest in partnership property can not become a partner in that partnership by proper agreement entered into with the other partners using the interest conveyed to the trust as its contribution to the capital of the partnership, then it seems to me that holding is contrary to the weight of authority and is wrong. Cf. *Thompson* v. *Riggs* (CA-8), 175 Fed. (2d) 81. The *Thompson* v. *Riggs* case was a case tried before a jury in the United States District Court for the Eastern District of Arkansas. The jury found that the six trusts involved had become, by agreement of the parties, bona fide members of the J. A. Riggs Tractor Co., a partnership. From the judgment of the District Court entered on this verdict, the collector of internal revenue appealed. The United States Court of Appeals affirmed the judgment, holding that there was substantial evidence to support the verdict of the jury. The circumstances as to how the six trusts became members of the partnership in that case were briefly these: Riggs, Sr., owned a 60 per cent interest in the partnership of J. A. Riggs Tractor Co. and his son owned 40 per cent. To use the language of the court:

Taxpayer was then in bad health and desired to retire from active management and to have his son take over control. To accomplish these purposes and to provide for his wife and the family of his son (wife and four children), he irrevocably created six separate individual trusts, conveying to each a 5% interest in the partnership business from his 60%. Right after creation of the trusts, a new partnership contract was executed by taxpayer, his son, and the trustees of the six trusts. * * *

The court concluded on these facts and other facts in the record that there was a valid partnership for Federal income tax purposes.

While there are some differences in the facts of the instant case from the *Thompson* v. *Riggs*, case, *supra*, I would not think these facts are sufficiently different to distinguish the two cases.

For the foregoing stated reasons, I respectfully dissent from the majority opinion.