COCA-COLA BOTTLING COMPANY OF SACRAMENTO, LTD., PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 19828, 25082, 25083. Promulgated July 31, 1951.

---

[1] Proceedings of the following petitioners are consolidated herewith : N. M. Sellers and Gladys Sellers.

*W. T. Fitzgerald, Esq.*, and *C. E. Musto, Esq.*, for the petitioners.
*W. J. McFarland, Esq.*, for the respondent.

108

114

## OPINION.

HARRON, *Judge: Issue 1.* The primary issue in these proceedings is whether the respondent erred in refusing to recognize the separate existence of the partnership and in including its income in the gross income of Sacramento Corporation. Sacramento Corporation, in Docket No. 19828, contends that the partnership was a separate economic entity and that its income cannot be imputed to the corporation. The respondent, however, alleges that the creation of the partnership served no business purpose and was merely a device whereby income was reallocated among the family group with resulting tax advantage. He argues, therefore, that the partnership was a sham which should be disregarded and that the income which purportedly was that of the partnership was in reality that of Sacramento Corporation. This issue relates to the tax liability of the corporation for its fiscal years ended February 29, 1944, February 28, 1945, and February 28, 1946.

It is an established rule that a taxpayer has the right to adopt the type of organization for the conduct of a business which he deems to be suitable and preferable, and he is not required to adopt the type of business organization which will yield the maximum tax upon the income earned by the business. *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436; *Chelsea Products Corp.*, 16 T. C. 840; *Cedar*

*Valley Distillery, Inc.*, 16 T. C. 870; *Estate of Julius I. Byrne*, 16 T. C. 1234; *Buffalo Motor Co.*, 10 T. C. 83; *Miles-Conley Co.*, 10 T. C. 754, affd. 173 F. 2d 958; *Seminole Flavor Co.*, 4 T. C. 1215; *Koppers Co.*, 2 T. C. 152; *Essex Broadcasters, Inc.*, 2 T. C. 523; *Twin Oaks Co.* v. *Commissioner* (C. A. 9, 1950), 183 F. 2d 385, reversing a Memorandum Opinion of this Court; and *Denning* v. *Commissioner*, 180 F. 2d 280. However, if the form of a business enterprise which a taxpayer adopts is a sham and a device to evade the burden of taxation, the law allows looking through the form to reality and disregarding the selected form of the business. *Higgins* v. *Smith*, 308 U. S. 473; *Gregory* v. *Helvering*, 293 U. S. 465.

The evidence shows that it was the intent of the parties that a partnership should take over and conduct the bottling and distributing business which the corporation previously had conducted, and that the operation of the bottling business actually was conducted by the partnership. A partnership consisting of N. M. and Gladys Sellers was created and operated as a distinct and separate economic entity. The partnership opened and maintained separate books of account; it opened and maintained separate bank accounts; it held title to all motor vehicles; it paid its own operating expenses; it had its own social security accounts and was the withholding agent for taxes on the payroll of its employees who numbered about 110 persons. The partnership operated under a sub-bottler's contract which was prepared and approved by the general counsel for the parent Coca-Cola bottling companies, which was in the almost identical form as the standard sub-bottler's contract, and was in conformity with the standard contract. It was approved by Sacramento Corporation's parent bottler, Pacific Coast Coca-Cola Bottling Company, and by the Coca-Cola Company. The entire arrangement of sublicensing the partnership would have been impossible without the approval of the above Coca-Cola companies. Under the original Articles of Partnership the term during which the partnership is to exist is of indefinite duration and is not limited to any period of years. The sub-bottling contract between Sacramento Corporation and the partnership can continue beyond the initial 5-year period, if the partnership continues to order Coca-Cola syrup for bottled Coca-Cola.

The members of the partnership are subject to the unlimited personal liability which may develop out of the operation of the business by the partnership in place of the limited liability to which they had been subject previously as stockholders of Sacramento Corporation when it conducted the bottling and distributing business. The change in personal liability is evidence of the reality in the change of the form of the entity which thereafter operated the business. There was conversion of the operation of the bottling and distributing business from operation by a corporation to operation by a partnership.

The chief stockholders of Sacramento Corporation are N. M. and Gladys Sellers, but there are also other stockholders, Pratt and Hunter, who, also, owned stock of Pacific Coast Coca-Cola Bottling Company. N. M. Sellers had attempted to purchase the stock of Sacramento Corporation which Hunter and Pratt owned, but they were unwilling to sell their stock. This explains to some extent the fact that Sacramento Corporation was not dissolved.

The fact that Sacramento Corporation continued in existence, holding title to some parcels of real estate and providing the partnership with syrup under the sub-bottling agreement does not detract from the reality of the transfer of the bottling business from the corporation to the partnership. If the corporation had been dissolved, the franchise to bottle and sell Coca-Cola in the territory might have been lost.

The price which the partnership paid to Sacramento Corporation for its physical assets represented the book value of the assets, and there is no evidence that the total price, $170,896.01 was not fair and reasonable. In this connection, it is noted that all of the vending machines were appraised and revalued so as to establish a fair price for them. The respondent argues that the purchase price was not adequate because no payment was made for good will. However, the ability of Sacramento Corporation to make a profit arose solely from its ownership of the Coca-Cola franchise in the Sacramento area, which it retained. The good will of the business lay in the Coca-Cola name and in the franchise, see *Floyd D. Akers*, 6 T. C. 693, and Sacramento Corporation was adequately compensated for the sublicense which it gave to the partnership to use the Coca-Cola name and formula, since under the terms of its sub-bottling contract with the partnership, Sacramento Corporation received the maximum return which the Coca-Cola Company allowed a first-line bottler to receive from a sub-bottler under a sub-license agreement. The contract between Sacramento Corporation and the partnership followed the pattern set up by the Coca-Cola Company for such agreements and was, in fact, drawn by the legal counsel of that company.

Upon consideration of all of the evidence, it is held that the respondent erred in refusing to recognize the partnership as a new and separate business entity and in including the income of the partnership for the taxable years in that of Sacramento Corporation and that the income of the partnership is not properly includible in the gross income of Sacramento Corporation.

It should be noted that the respondent does not rely upon the provisions of section 45 of the Code in making his determination that all of the income of the partnership should be added to the income of the corporation. We do not, therefore, consider the applicability of section 45. See, however, *Cedar Valley Distillery, Inc., supra;* and *Miles-Conley Co.*, 10 T. C. 754, *supra.*

It follows from the holding made under this issue that in Docket Nos. 25082 and 25083, N. M. Sellers and Gladys Sellers, petitioners, the respondent erred in his determination that each of them received constructive dividends from Sacramento Corporation consisting of the net earnings of the partnership.

*Issue 2.* The next question is whether Sacramento Corporation is entitled to an unused excess profits credit carry-back from the fiscal year 1946 to the fiscal year 1944. The respondent contends that Sacramento Corporation is not entitled to the carry-back because it was a personal holding company within the meaning of sections 501 (a) and 502 of the Internal Revenue Code [3] during 1946, and therefore was not subject to the excess profits tax. Sacramento Corporation argues, however, that it was not a personal holding company during 1946. It bases this argument on the contention that the major portion of its income was not in the nature of royalties from the sublicense of the use of the Coca-Cola name and formula, but represented profits from the purchase of Coca-Cola syrup at $1.30 per gallon and its resale at $1.50 per gallon.

Sacramento Corporation performed no actual services in connection with the procurement of the syrup, except to receive the payments from the partnership and pass them along to Pacific Coast after deducting 20 cents per gallon. Delivery of the syrup was direct to the partnership. The 20 cents per gallon retained by Sacramento Corporation was in exchange for the corporation's exclusive right to receive Coca-Cola syrup from Pacific Coast and exclusively to bottle and vend the Coca-Cola product in the Sacramento area. The 20 cents per gallon

---

[3] SEC. 501. DEFINITION OF PERSONAL HOLDING COMPANY.

(a) GENERAL RULE.—For the purposes of this subchapter and chapter 1, the term "personal holding company" means any corporation if—

(1) GROSS INCOME REQUIREMENT.—At least 80 per centum of its gross income for the taxable year is personal holding company income as defined in section 502; but if the corporation is a personal holding company with respect to any taxable year beginning after December 31, 1936, then, for each subsequent taxable year, the minimum percentage shall be 70 per centum in lieu of 80 per centum, until a taxable year during the whole of the last half of which the stock ownership required by paragraph (2) does not exist, or until the expiration of three consecutive taxable years in each of which less than 70 per centum of the gross income is personal holding company income; and

(2) STOCK OWNERSHIP REQUIREMENT.—At any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals.

SEC. 502. PERSONAL HOLDING COMPANY INCOME.

For the purposes of this subchapter the term "personal holding company income" means the portion of the gross income which consists of:

(a) Dividends, interest (other than interest constituting rent as defined in subsection (g)), royalties (other than mineral, oil, or gas royalties), annuities.

    \*        \*        \*        \*        \*        \*

(g) RENTS.—Rents, unless constituting 50 per centum or more of the gross income. For the purposes of this subsection the term "rents" means compensation, however designated, for the use of, or right to use, property, and the interest on debts owed to the corporation, to the extent such debts represent the price for which real property held primarily for sale to customers in the ordinary course of its trade or business was sold or exchanged by the corporation; \* \* \*

was an interest reserved by Sacramento Corporation in return for the sublicense which it granted to the partnership to use the exclusive license owned by Sacramento Corporation. The amounts involved were paid by the partnership in proportion to the use made of the principal right granted by the sub-bottling contract, that is, on the basis of the quantity of Coca-Cola syrup used by the partnership in bottling and vending Coca-Cola.

In addition, as Sacramento Corporation argued under the first issue, it was the right to use the Coca-Cola name which rendered the business profitable and without which the syrup would have had little value over the basic cost of its ingredients. When Sacramento Corporation's territory was enlarged in 1936, the corporation entered into an agreement with another first-line bottler whereby the latter bottler agreed to release the additional territory, which originally had been licensed to it, in exchange for an agreement by Sacramento Corporation to pay it a royalty of 20 cents per gallon for all Coca-Cola syrup used in supplying the territory so released. There is no real difference between the payments of 20 cents per gallon made by Sacramento Corporation under that agreement and the 20 cents per gallon retained by it as the result of the sub-bottling agreement with the partnership. The exclusive right to use the Coca-Cola name and bottle and vend the bottled product in the Sacramento territory was licensed to the partnership by Sacramento Corporation for a period of 5 years. It is concluded that the 20 cents per gallon received by Sacramento Corporation above the amount which it had to remit to Pacific Coast constituted payment for the exclusive license granted to the partnership. As such, those amounts constituted royalties within the purview of section 502. *Puritan Mills*, 43 B. T. A. 191; cf. *Hugh Smith, Inc.*, 8 T. C. 660, affd. 173 F. 2d 224, certiorari denied 337 U. S. 918.

Since Sacramento Corporation received more than 80 per cent of its gross income during 1946 from dividends, interest, rents, and royalties, and since more than 50 per cent in value of its outstanding stock was owned by not more than five individuals, the corporation was a personal holding company under section 501. As a personal holding company, Sacramento Corporation was specifically exempt from the excess profits tax under section 727. It follows and it is held that it is not entitled to any excess profits credit carry-back from the year 1946. Cf. *Wier Long Leaf Lumber Co.*, 9 T. C. 990, revd. 173 F. 2d 549; *Mesaba-Cliffs Mining Co.*, 10 T. C. 1010, revd. 174 F. 2d 857.

*Issue 3.* The third issue pertains only to petitioners N. M. Sellers and Gladys Sellers, Docket Nos. 25082 and 25083, and relates to their income tax liability for 1944 and 1945. The question under this issue is whether the two children of N. M. and Gladys Sellers should be recognized for tax purposes as bona fide partners in the partnership during the years 1944 and 1945. Although the respondent does not

dispute the existence of the partnership under this issue, it being his position that if under Issue 1 the partnership is recognized as a separate business entity apart from Sacramento Corporation, then in the alternative he recognizes Mr. and Mrs. Sellers as the only members of the partnership, he has refused to recognize Jack and Virginia as partners, and he has determined that their shares in the partnership income should be included in the gross income of their parents for their calendar years 1944 and 1945. The correctness of this determination depends upon whether or not N. M. and Gladys Sellers, in good faith and acting with a business purpose, really intended on January 1, 1944, to join together with Jack and Virginia in the then present conduct of a business. *Commissioner* v. *Culbertson*, 337 U. S. 733; and *Commissioner* v. *Tower*, 327 U. S. 280. Upon consideration of all the facts and circumstances present in these proceedings, we have found as a fact that the parties did not intend on or about January 1, 1944, to join with their children, Jack and Virginia, in the then present conduct of a business in good faith and with a business purpose, and that the children did not have that intention on or about January 1, 1944; that during the period from January 1, 1944, until November 30, 1945, at least, Jack and Virginia Sellers were not bona fide members of the partnership, and that they were not bona fide members of the partnership during the calendar years 1944 and 1945.

The conduct of the Coca-Cola bottling business remained unchanged upon the formation of the alleged partnership with Jack and Virginia. The parents continued personally to operate and control the partnership business as they had done with respect to the business of Sacramento Corporation in prior years. The partnership agreement is careful to reserve away from Jack and Virginia all right of participation in the control and management of the business. Such participation has been viewed by the Supreme Court as a factor of prime importance in determining the bona fides of a family partnership. *Commissioner* v. *Culbertson, supra.*

The actual conduct of the business is an important factor militating against the contention of the petitioners that Jack and Virginia were bona fide partners during 1944 and 1945. During 1944 and 1945 Jack was serving with the Navy, and for most of that time was stationed at the Naval Air Station in Glenview, Illinois. The only services he performed for the partnership during this period were as a route salesman during the last two months of 1945 after his separation from the Navy. Virginia, also, performed only desultory services for the partnership during several of the months involved. Both were adequately compensated for whatever services they did perform. However, neither Jack nor Virginia rendered vital services, and neither one participated in the management of the business during 1944 or 1945. Any intent which Jack or Virginia might have had to perform

services for the partnership in the *future* or to in fact become members of the partnership in the future, is not sufficient to give them a partnership status for tax purposes during 1944 and 1945. *Commissioner* v. *Culbertson, supra.* Moreover, the parties never intended that Virginia should exercise an interest as a partner in the business. It was their intention that her husband, who was released from the Army in 1946, should work for the business and look after any interest that his wife might have upon his release from the Army.

The petitioners rest their contention that their children became members of the partnership known as Coca-Cola Bottling Company of Sacramento primarily upon the allegation that each contributed $6,000 to the capital of the business in January 1944. Although no ready "test" can determine whether or not members of a family have joined with other members of the family in the present conduct of a business, *Commissioner* v. *Culbertson, supra,* the lack of a contribution of capital is an important factor which weighs heavily against the taxpayer who contends that another member of his family is a bona fide partner for tax purposes. *Commissioner* v. *Tower, supra; Lusthaus* v. *Commissioner,* 327 U. S. 293. Keeping in mind the admonition that no single "test" is determinative of the question, and that all of the facts and circumstances must be considered, we have considered carefully all of the evidence under this issue, bearing in mind, also, that income produced by services is taxed to the person who performs the services, and income produced by property is taxed to the owner of the property.

There was an established business, the conduct of which was changed in 1944 from operation by a corporation to operation by a partnership. The earnings were derived from sales of bottled Coca-Cola, and apparently the sales were made on a cash basis with a rapid turnover. Earnings were largely attributable to the sub-bottling contract from the corporation, to the selling efforts of hired salesmen, to the receptive market, particularly Camp Beale, and to management. N. M. Sellers applied his personal efforts toward the obtaining of the sub-bottling contract, and his entire time was devoted to managerial services, which included the hiring and supervising of salesmen. Admittedly neither Jack nor Virginia Sellers gave one iota of time or service in the obtaining of the sub-bottling contract or the selling activities. The property used in the business was acquired from the Sacramento Corporation, and notes of the partnership were given therefor. None of the property used in the partnership business was acquired with any of the alleged capital contributions of Jack and Virginia. Jack and Virginia Sellers owned the improved realty where the Marysville plant was located, but they did not contribute that property to the partnership. The question is, therefore, whether the alleged cash contributions of Jack and Virginia were used in the business.

With respect to cash, there is no evidence about the cash position of the Sacramento Corporation at the time the partnership was created to take over the business, but a reasonable assumption is that it was good in view of the first year's earnings of the partnership. The gross and net receipts of the partnership in the 1944 fiscal year amounted to $742,698.88 and $83,374.44. Not only is there no evidence to show that any part of the earnings was due to the alleged contributions of $6,000 of Jack and Virginia, but there is evidence that in the first two fiscal years more than $12,000 was disbursed under the petitioners' directions to purchase for Jack and Virginia war bonds and property, and for their use. We cannot find from all of the evidence, therefore, that their alleged contribution of $12,000 in 1944 was either needed in the business, used in the conduct of the business, or productive of any of the earnings of the business. The reality of the arrangement was that N. M. and Gladys Sellers deposited their own $24,000 in the firm's bank account over which they exercised control. Jack and Virginia were not authorized to draw checks on the firm's bank account. The earnings of the business were under petitioners' control. Also, we cannot find that the giving of notes for the alleged loan of $12,000 satisfies the requirements of a contribution of capital. They were not repayable in any event but only out of earnings, and since $12,000 was advanced to Jack and Virginia, the notes involved could be viewed rather as evidence of personal loans. Upon the evidence it has been found as a fact that N. M. and Gladys Sellers contributed $24,000 on January 3, 1943, and that Jack and Virginia did not contribute $6,000 each, to the venture.

Furthermore, a critical analysis of the entire arrangement of depositing $24,000 to the account of the partnership at the time the partnership agreement became effective shows that it lacked a true business purpose. It is not shown that the partnership was in need of working capital. A going business was taken over from the corporation in which monthly sales gave a quick turnover of cash. The transfer of $24,000 by N. M. and Gladys Sellers to a bank account of the partnership from their other accounts was in itself a re-allocating of their own funds, and at least $12,000 thereof is not shown to have been either needed or to have been a loan in the usual business sense.

Upon all of the evidence, we cannot find as a fact that there was a present intent on the part of N. M. and Gladys Sellers (or on the part of the children) to presently operate the business as a genuine partnership with their children during 1944 and 1945, and it is held that Jack and Virginia were not bona fide partners during 1944 and 1945. The respondent's determination on this issue is sustained. See: *Simmons* v. *Commissioner*, 164 F. 2d 220; *Joseph J. Morrison*, 11 T. C. 696, affd. 177 F. 2d 351; *T. Edward Ritter*, 11 T. C. 234, affd. 174 F. 2d 377; *W. F. Harmon*, 13 T. C. 373; *W. Stanley Barrett*, 13 T. C.

539, affd. 185 F. 2d 150; *Herman Feldman*, 14 T. C. 17, affd. 186 F. 2d 87.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

BLACK, *J.*, dissenting: I am in entire agreement with the majority opinion wherein it holds that the Coca-Cola Bottling Company of Sacramento, Ltd., and a partnership organized January 1, 1944, known as Coca-Cola Bottling Company of Sacramento were separate legal entities and the income of the partnership cannot be taxed to the corporation. It seems to me that the facts fully support the majority opinion in its holding. on that issue. I think its reasoning is sound and the authorities which are cited well support the conclusion which is reached.

While I find myself in entire agreement with the majority opinion on that issue, I am not in agreement with the holding of the majority that N. M. Sellers and Gladys Sellers were the only members of the partnership. It seems to me that such a holding is in conflict with the facts which are present in this proceeding. The question of whether a partnership is to be recognized for income tax purposes depends upon whether the parties, in good faith and acting with a business purpose, intended to join together as partners in the present conduct of the enterprise. *Commissioner* v. *Culbertson*, 337 U. S. 733. The Commissioner has determined that N. M. Sellers and Gladys Sellers were members of the partnership which was organized January 1, 1944, but that their two children, Jack Sellers and Virginia Sellers, who also signed and obligated themselves under the very same partnership agreement, were not members of the partnership. The majority opinion sustains the Commissioner on this point and has an ultimate finding of fact as follows:

On or about January 1, 1944, N. M. Sellers and Gladys Sellers, on the one hand, and Jack Sellers and Virginia Sellers, on the other hand, did not in good faith and acting with a business purpose intend then to join with each other, the parents with the children or the children with the parents, in the present conduct of the business known as Coca-Cola Bottling Company of Sacramento, a partnership, and Jack and Virginia Sellers were not during 1944 and 1945 bona fide members of that partnership.

I. think the foregoing ultimate finding of fact is not justified by the record. At the time this partnership was formed Jack Sellers was 23 years old and Virginia was 19 years of age. They had grown up in the business, so to speak, and it seems only natural that the parents would want to take them into the business as partners and I think that they did so in the written partnership agreement which was executed by the respective partners. This is not a case of parents endeavoring to take young minor children into a partnership with a

view of reducing their own income taxes. Jack and Virginia had grown up to the adult stage at the time the partnership was formed. It seems to me that it is safe to say that the partnership thus formed would be recognized under the laws of California for all purposes and I see no reason why it should not be recognized for Federal income tax purposes. It seems to me that to refuse to recognize it for what it really was is wholly illogical.

I shall not in this dissenting opinion undertake to review all the facts which I think sustain the validity of the partnership under the rule of the *Culbertson* case, *supra*. It would unnecessarily prolong this dissenting opinion to do so. I will simply say that applying the test which the Supreme Court laid down in *Commissioner* v. *Culbertson*, I think the partnership which was formed January 1, 1944, was composed of N. M. Sellers, Gladys Sellers, Jack Sellers, and Virginia Sellers and that the majority opinion errs in holding that only N. M. Sellers and Gladys Sellers were members of the partnership and that all the income of the partnership is taxable to them.

To this holding of the majority, I respectfully dissent.