**MESABA–CLIFFS MIN. CO. v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10796.**

United States Court of Appeals
Sixth Circuit.

May 11, 1949.

W. B. Cockley, of Cleveland, Ohio (William B. Cockley, Theodore R. Colborn, and Henry C. Harvey, all of Cleveland, Ohio, of Counsel; Jones, Day, Cockley & Reavis, of Cleveland, Ohio, on the brief), for petitioner.

Irving Axelrad, of Washington, D. C. (Theron Lamar Caudle, Ellis N. Slack, Helen Goodner, and Sumner M. Redstone, all of Washington, D. C., on the brief), for respondent.

Before SIMONS, MARTIN, and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

The Mesaba-Cliffs Mining Company, having become entitled to a credit for excess profits tax for the calendar year of 1940, sought to carry over and avail itself of such credit for the year 1941 in order to reduce its income subject to excess profits tax in the latter year. The Tax Court, sustaining the Commissioner, held that the company was not entitled to carry over such credit, and, as a consequence, determined a deficiency in excess profits tax for 1941 in the amount of $122,692.62. On appeal, the company contends that under Section 710 of the Internal Revenue Code, 26 U.S. C.A. § 710, it was entitled to deduct a carry-over of its stipulated 1940 unused excess profits credit in computing its income subject to excess profits tax for the year 1941.

A brief review of the nature of the mining company's business and its operations in the past is helpful to an understanding

of the issue before the court and the contentions of the parties.

Petitioner is a mining corporation, owning and operating open pit iron ore mines in Minnesota. In compliance with its by-laws. it has, in the past, sold its entire production of ore each year to the eight iron ore and steel corporations which own its entire stock. Sales were made to these corporations in proportion to their stockholdings, at prices fixed from time to time by petitioner's directors. For eight years prior to December 31, 1940, the ore was sold at cost to the stockholders, as determined by petitioner's accountants. During that period, petitioner's net income or deficit each year was only a small amount, resulting from variations in costs. In 1940, the Act imposing an excess profits tax on corporations became effective, and it became apparent that a continuance of petitioner's practice of selling ore to its stockholders at cost would subject petitioner and its stockholders to a substantial tax disadvantage, resulting from the fact that the benefit of the excess profits credit provided by statute on account of petitioner's large invested capital would be largely lost. The board of directors of petitioner, therefore, determined that its ore should be sold during 1941 at specified prices above actual cost but not at more than fair market value. Sales to the stockholders were made in 1941, as in prior years, substantially in proportion to their stockholdings at these revised prices. As a result of these prices, petitioner had a considerable excess profits net income in 1941, amounting to $542,902.39. Its 1941 excess profits credit, based on an equity-invested capital of $3,458,038.47, was about one-half this amount, or $276,643.08. Its 1940 excess profits credit, however, was in excess of its 1940 net income by $259,533.46, which amount, as was stipulated by the Commissioner, constituted petitioner's "unused excess profits credit" for that year. The total 1940 and 1941 credits being almost equal to its excess profits net income, petitioner took the position that no excess profits tax was due for 1941, except a small deficiency conceded to be due on account of minor adjustments. However, the Commissioner determined that petitioner was not entitled

to carry over its unused 1940 credit to 1941 and determined a deficiency in excess profits tax for 1941, as mentioned above, of $122,692.62. The foregoing recital brings us to the basis on which the tax in question is established.

The basis on which excess profits tax is levied, collected, and paid is declared to be the adjusted excess profits net income, Section 710(a) (1). The adjusted excess profits net income is, in Section 710(b), defined as the excess profits net income minus: (1) A specific exemption (not involved in this case); (2) the amount of the excess profits credit allowed under Section 712 (in this case, a sum which was stipulated for 1941); and (3) the amount of the unused excess profits credit adjustment for the taxable year, computed in accordance with Subsection (c). Subsection (c) sets forth that: "(1) The unused excess profits credit adjustment for any taxable year shall be the aggregate of the unused excess profits credit carry-overs and unused excess profits credit carry-backs to such taxable year."

Subsection (c) is the important provision in this case. The government contends that petitioner is not entitled to any credit adjustment under this section. Petitioner insists that it is entitled, by virtue of Subsection (c), to carry over its stipulated 1940 unused excess profits credit to compute its income subject to excess profits tax for 1941. The issue, therefore, is whether petitioner is entitled to include any amount as an excess profits credit adjustment under Subsection (c).

In the opinion of the Tax Court, it was declared that petitioner unquestionably would be entitled to the use of the stipulated unused excess profits credit carry-over, in computing its 1941 excess profits net income, "if the excess profits provisions of the statute are to be given general application to all corporations, as the petitioner contends they should." The Tax Court, however, held that "those provisions are not to be so construed, but that the facts of each case must be examined to determine whether the conditions which Congress sought to relieve actually obtain." It then referred to its decision in Wier Long Leaf Lumber Co. v. Commissioner, 9

T.C. 990, and quoted the following from its opinion in that case:

" * * * the excess profits tax credit carry-back was intended by Congress to benefit only corporations which had been in active production throughout the war period and which had projected their activities to 'peacetime years.' The amendment was surely not adopted to permit a corporation during wartime years to cease all productive activity and obtain a substantial profit at the expense of the Federal revenue for doing nothing. Such an interpretation would permit a needless and unreasonable diversion of war-time revenue, would promote inflation, and would not assist reconversion to peacetime economy."

Remarking that the principle of the Wier case should apply to the instant case, the Tax Court observed that petitioner was organized and was operated until 1941 as what might be termed a nonprofit corporation; that if it had continued to operate at cost, there would never have arisen any question of the excess profits credit carry-over, or even excess profits; that in operations at cost, or without profit, petitioner would have passed on the profits to its stockholders in the form of lower prices for their ore and the stockholders would have received no benefit in the computation of their excess profits tax, on account of petitioner's invested capital; and that the obvious reason for petitioner's change of policy in 1941 was to take advantage of the invested capital provisions of the statute. It was stated, however, that petitioner was within its rights in adjusting its business operations to the tax advantage of its stockholders. But the Tax Court expressed the view that the legislative history illuminated the intention of Congress, and referred to the fact that the report of the Senate committee having the bill in charge declared that the statutory provision "relieves the hardships which may be caused by the sharply fluctuating earnings of many types of companies, the activities of which are dependent upon business cycles, by allowing unused excess-profits credits to be carried over into the two succeeding taxable years, thereby tending to level off the unusual effects due to rise and fall of income. In addition, the allowance of such an excess profits credit carry-over will be of substantial benefit to new corporations, and to old corporations undergoing a period of expansion." The conclusions drawn from the Senate committee report were that none of the conditions referred to therein, was to be found in the instant case; that there was no fluctuation of petitioner's earnings dependent on business cycles, but, rather, it was the result of a voluntary change of policy; that the company's earnings had been at all times subject to control by its stockholders, and that it could not have been the purpose of Congress to level off the effects of the rise and fall of a controlled income. The Tax Court concluded by saying that it was inconceivable that Congress intended to include in the averaging of the excess profits tax a year in which the taxpayer did not have and, under its plan of operation, did not intend to have any profits. The statute was, therefore, construed as making the excess profits credit carry-over, as well as the carry-back, available only to those taxpayers who, during both the taxable period and the preceding or succeeding periods, had maintained a normal going business, devoted substantially to the production of profits

With regard to the reliance on the legislative history as an aid to the interpretation of the statute, petitioner points out that the Tax Court based its determination largely on a few specific types of cases which were mentioned in the Senate report merely as illustrations of certain instances where the Act would afford relief, and not as an exclusive enumeration of all cases where the carry-over would be available. Moreover, counsel for petitioner emphasize that the committee reports of the Senate and the House of Representatives clearly declare that the carry-over provision is applicable to all corporations subject to the excess profits tax; that the reports state that "equitable considerations demand that every reasonable precaution be taken to prevent unfair application of the tax in abnormal cases," and that "specific treatment designed alone for such unusual cases as could then be foreseen would not prove adequate to meet the equitable demands"; and that it was further said in the reports that "relief in abnormal

cases can not be predicated on specific instances foreseeable at any time. The unusual cases that are certain to arise are so diverse in character and unpredictable that relief provisions couched in other than general and flexible terms are certain to prove inadequate."

In the brief filed on behalf of the Commissioner, counsel cite the holding of the Tax Court in Wier Long Leaf Lumber Co. v. Commissioner, supra, that a corporation which remains in the process of liquidation for a period of years may not continue to create and carry back excess profits tax credit each year simply by engaging in no business activity. Counsel remark that it is of interest to note that the Senate report referred to in the instant case, declares the purpose in enacting the carry-back provisions to be the same as that in enacting the carry-over provisions. They further emphasize that the Tax Court has previously held that "the excess profits tax credit carry-back was intended by Congress to benefit only corporations which had been in active production throughout the war period and which had projected their activities to 'peacetime years.' The amendment was surely not adopted to permit a corporation during wartime years to cease all productive activity and obtain a substantial profit at the expense of the Federal revenue for doing nothing." Wier Long Leaf Lumber Co. v. Commissioner, supra.

The above decision of the Tax Court in the Wier case, relied upon by the government, has been, since the filing of briefs in this case, reversed by the Court of Appeals, 5 Cir., 173 F.2d 549. In its opinion of reversal, the Court of Appeals observed that it found itself in complete disagreement with the general view of the Tax Court, as expressed in the foregoing quotation, and with its holding that a corporation in liquidation can not be held a corporation within the meaning of Section 710. It was this quotation from the Wier case which was referred to by the Tax Court in its opinion in the instant case as expressing the principle that should here govern decision.

We find the statutory language involved in this case to be neither doubtful nor ambiguous. The Act provides that "The unused excess profits credit adjustment for any taxable year shall be the aggregate of the unused excess profits credit carry-overs * * * to such taxable year," Section 710(c) (1); and that if a taxpayer has an unused excess profits credit for any one year, it shall be an unused excess profits credit carry-over for the succeeding year, or, in appropriate cases, two years. Section 710(c) (3) (B).

■ There is no difference between the parties here as to the meaning of the language with respect to the foregoing provisions. In fact, it is stipulated that petitioner had an unused excess profits carry-over from 1940 of $259,533.46. The controversy arises with regard to the way in which those provisions should be construed. Since they are unambiguous and clear, and there can be no doubt of the meaning of the words used, it is our conclusion that they are to be read in their natural and ordinary sense.

Government counsel submit that in the House report, it was said that the success or failure of legislation of this type depends to a considerable degree upon its intelligent and sympathetic administration and that because of its confidence in the experience and ability of the officials of the Treasury Department and the Bureau of Internal Revenue, the committee recommended the present flexible and broad legislation as the most satisfactory method of meeting the contingencies that will arise. The foregoing, counsel say, is "a clear expression of Congressional intention to couch the statute in general language with the understanding that the provisions would be interpreted and modified in accordance with the purpose of the legislation"—presumably by the Treasury Department and the Bureau of Internal Revenue. In the plain provisions of the Act and in the absence of a manifestation on the part of Congress of any purpose such as is argued by government counsel, we find no justification for reading limitations, restrictions, or qualifications into the statute. In the language of Judge Simons, in a recent case before this court, "there is here no ambiguity in the statute which may be resolved

by reference to Congressional proceedings and debates, and this is not one of those rare cases where inept statutory phrasing seems to be in conflict with the otherwise clearly indicated Congressional purpose and requires interpretation in the light of that purpose". Michigan Window Cleaning Company v. Martino et al., 6 Cir., 173 F.2d 466, 469. See also, Helvering v. Cannon Valley Milling Co., 8 Cir., 129 F.2d 642.

Read in its ordinary and natural sense, the meaning of the statutory provisions in question appears to be that petitioner, in computing its income subject to excess profits tax for the year 1941, is entitled to deduct from its excess profits net income, under Section 710(b), the carry-over of its stipulated 1940 unused excess profits credit. Such is the literal meaning of the words of the statute; and this does not thwart any of the purposes of the Act, which were to raise revenue for national defense and prevent the amassing of great profits by reason of wartime conditions, at the same time avoiding confiscatory taxes by allowing fair credit for normal earnings on invested capital. In this case, before the enactment of the excess profits tax, the aggregate taxable income of petitioner company and its stockholders would have been the same whether the ore was sold at cost or at market price. After the enactment of the tax, sales at cost, in accordance with petitioner's previous practice, would have resulted in a tremendous disadvantage to petitioner and its stockholders considered as a unit, as petitioner would practically lose its invested capital credit, and the profit from its operations would be included in the taxable income of its stockholders and be taxed at excess profits tax rates, without regard to the invested capital of petitioner. We are in accord with counsel for petitioner that the effect of allowing the carry-over in this case is to accord it full credit provided by Congress on account of petitioner's invested capital, which petitioner and its stockholders would not otherwise be able to obtain. This neither thwarts the purposes of the Act nor leads to unfair, absurd, or unjust results.

Petitioner concedes a deficiency in its excess profits tax for 1941 in the amount of $604.05. Since the entire deficiency which was found, except for the admitted amount, resulted from denial of the carry-over of petitioner's unused excess profits credit for 1940, the decision of the Tax Court is reversed and a deficiency of $604.05 is ordered entered in petitioner's excess profits tax for 1941.