**KEN–RAD TUBE & LAMP CORP. v. COMMISSIONER OF INTERNAL REVENUE.**

**KEN–RAD TRANSMITTING TUBE CORP. v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 10,884, 10,885.

United States Court of Appeals Sixth Circuit.

March 16, 1950.

James E. Fahey, Louisville, Ky. (William A. MacKenzie, Jr., Louisville, Ky., on the brief, Skaggs, Hays & Fahey, Louisville, Ky., of counsel), for petitioner.

Fred E. Youngman, Washington, D. C. (Theron Lamar Caudle and Ellis N. Slack, Washington, D. C., on the brief), for respondent.

Before ALLEN, McALLISTER, and MILLER, Circuit Judges.

McALLISTER, Circuit Judge.

Ken-Rad Transmitting Tube Corporation, petitioner taxpayer herein, acquired or constructed certain emergency facilities in 1941, 1942, and 1943. The assets were later distributed to its parent corporation, Ken-Rad Tube and Lamp Corporation, in complete liquidation, as of June 30, 1943; and the parent corporation sold them at a profit on January 2, 1945. Petitioner taxpayer was entitled to amortize the "basis" of such emergency facilities over a period of sixty months for federal income tax purposes under Section 124(a) of the Internal Revenue Code, 26 U.S.C.A. § 124(a).

In addition, subsection (d) (1) of Section 124 of the Code provided, on proclamation of the President of the United States that the emergency period had ended, for termination of the amortization period prior to the expiration of the sixty-month period specified in subsection (a), and for the recomputation of the taxpayer's tax based upon a shorter amortization period.

Prior to the end of the emergency, petitioner elected to amortize over a sixty-month period, as provided in Section 124 (b). Thereafter, the President, pursuant to Section 124, terminated the emergency period as of September 29, 1945. Subsequently, the taxpayer duly elected to have its deductions for amortization of emergency facilities recomputed on the basis of a commuted amortization period, beginning with the month following the month in which such facilities were completed or acquired, and ending September 30, 1945, by virtue of the President's proclamation, in accordance with Section 124(d) (1).

The issue in this case is whether the taxpayer is entitled to use the commuted period provided for in Section 124(d) (1) of the Internal Revenue Code for the amortization of the emergency facilities. The taxpayer appealed from a decision that it was not entitled to use the commuted period. It is conceded that liability for any deficiency in taxes, found in the foregoing proceedings, must be paid by the Ken-Rad Tube and Lamp Corporation by reason of its status as transferee; and it is only because of that fact that it is involved in these proceedings.

The Tax Court was of the opinion that the statute requires the taxpayer to be the owner of the facilities at the time of the President's proclamation in order to make the election to terminate the amortization period as of the end of the month in which the Presidential proclamation was issued, instead of at the end of the sixty-month period. Since the taxpayer had disposed of the facilities prior to the Presidential proclamation, it was held that it could not bring itself within the provisions of Section 124(d) (1) permitting the election of the shorter period of amortization.

The foregoing conclusion of the Tax Court was based upon the section of the statute providing that when the election to use the amortization period has been made by the taxpayer, then "under regulations prescribed by the Commissioner with the approval of the Secretary, the taxes for all taxable years, beginning with the taxable year in which the amortization period began, shall be computed in accordance with an amortization deduction computed in accordance with the method provided in subsection (2)* but using (in lieu of the sixty-month period provided in such subsection) the amortization period specified in paragraph (1), (2), or (3), as the case may be." Section 124(d) (4) of the Internal Revenue Code.

Under this provision, the Tax Court reasoned that the statute requires that the taxes for all taxable years, beginning with the taxable year in which the amortization period began, "shall be computed with an amortization deduction based upon the newly elected amortization period ending September 30, 1945, in lieu of the previously elected period of sixty-months." The Tax Court concluded that when an election was made to use the shortened period, Section 124(d) (4), above quoted, required the recomputation of the taxes for all taxable years in which the newly elected amortization period fell, and that since the taxpayer had disposed of its assets in June, 1943, it could not make the adjustment for the entire amortization period, and, therefore, could not bring itself within the terms of the statute.

In our opinion, however, "taxable year," as used in the above quoted section of the statute, must mean each taxpayer's tax period affected by the amortization provision, as is contended by the taxpayer. This seems evident from the provision of the statute describing the method for com-

* The reference to subsection (2) was apparently a typographical error in the Tax Court's quotation. Internal Revenue Code, Section 124 (d) (4) here reads subsection (a) instead of subsection (2).

puting the amortization deduction, which provides: "* * * Such amortization deduction shall be an amount, with respect to each month of such period within the taxable year, equal to the adjusted basis of the facility at the end of such month divided by the number of months (including the month for which the deduction is computed) remaining in the period. * * *" Section 124(a) of the Internal Revenue Code.

■ . See also Muhleman et al. v. Hoey, 2 Cir., 124 F.2d 414 on construction of "taxable year" as used in Section 116(a) of the Revenue Act of 1932, 26 U.S.C.A. § 116(a). The construction, given by the Tax Court, to the term, "taxable year," in the section of the Act here before us, is not, in our opinion, in keeping with the language of the statute. The statute plainly provides for the shortened period of amortization. It contains no limitation requiring the taxpayer to own the property at the end of the emergency period. It gives the right to elect whether the costs shall be amortized over the longer or shorter period. We are directed to no evidence of Congressional purpose in support of the Commissioner's contention. In the plain provisions of the section of the statute in question, and in the absence of a manifestation on the part of Congress of any purpose that the language used should be interpreted otherwise than according to its commonly accepted meaning, we find no justification for reading limitations, restrictions, or qualifications into the statute. See Mesaba-Cliffs Mining Co. v. Commissioner of Int. Rev., 6 Cir., 174 F.2d 857; Michigan Window Cleaning Co. v. Martino et al., 6 Cir., 173 F.2d 466.

From the foregoing, it is our conclusion that it was the intention of Congress that the taxpayer should, if he elected, have the benefit of a charge-off based on the actual emergency period rather than on the sixty-month emergency period, for such portion of the actual emergency that the taxpayer actually owned the emergency facilities, regardless of the fact that such taxpayer might not be the owner of the property at the time of the Presidential proclamation terminating the emergency period.

The decision of the Tax Court is set aside and the case is remanded for further proceedings consonant with this opinion.

ALLEN, Circuit Judge, dissenting.

I regret that I can not agree with the opinion of my colleagues. I think that the decision of the Tax Court should be affirmed for the reasons stated in its opinion.