### ALUMINUM PRODUCTS CO. v. UNITED STATES.

#### No. 49499.

United States Court of Claims.

Dec. 4, 1951.

David W. Richmond, Washington, D.C., for the plaintiff.

Arthur W. Sprague, Chicago, Ill., and Miller & Chevalier, Washington, D.C., on the brief.

Joseph H. Sheppard, Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, and A. F. Prescott, all of Washington, D. C., for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

MADDEN, Judge.

The plaintiff sues to recover $34,677.14 of excess profits taxes paid by it for the calendar year 1944. Those taxes were properly collected in 1944 but the plaintiff claims that it was entitled to have them refunded when, in 1946, it had an unused excess profits credit which it says, it was entitled, under the statutes, to carry back to 1944. The Commissioner of Internal Revenue denied the plaintiff's claim for refund, and the plaintiff brought this suit.

During 1944, and for many years before that, the plaintiff was an operating manufacturing company, making a variety of aluminum and stainless steel products at its plants in LaGrange and Lemont, Illinois. After negotiations begun in 1944 the plaintiff, in December 1945, sold its manufacturing business to the Reynolds Metals Company, and agreed not to enter into any business competitive with that of the Reynolds Company for 20 years. The plaintiff's plan was to keep the funds which it received from Reynolds available for investment in new business ventures, if desirable ones became available.

In 1946 the plaintiff's only activity was the management of certain apartment houses owned by it. Its income was derived principally from interest, rents, and dividends. Since 94.48 percent of its common stock was owned by one person, it was a personal holding company, within the meaning of Section 501 of the Internal Revenue Code, 26 U.S.C.A. § 501, which defines a personal holding company, and its income was personal holding company income as defined in Section 502. It filed its income tax return for 1946 on that basis and does not now contest that classification. The plaintiff contends that, although it was a personal holding company in 1946, and personal holding companies, because of the provisions of Section 727 of the Internal

Revenue Code, 26 U.S.C.A. § 727, never were subject to the excess profits tax imposed by the Revenue Act of 1940, Section 710 of the Internal Revenue Code, 26 U.S. C.A. § 710, and in effect during World War II, it was nevertheless entitled to carry back an excess profits tax credit, unused in 1946, to cancel out the excess profits tax which it had paid for 1944 when it was an operating company. The Government denies this contention, saying, in effect, that a corporation which has no excess profits tax to pay, and would have none, regardless of its profits, because it is not subject to the tax, cannot have an excess profits tax credit, for carry-back purposes or any purpose. The plaintiff counters this argument by pointing out that no corporation had any excess profits tax to pay for the year 1946 because the excess profits tax law had been repealed, for any taxable year beginning after December 31, 1945, by Section 122 of the Internal Revenue Code, introduced by Chapter 453 of the Revenue Act of 1945, 26 U.S.C.A. § 710(c) (2). However, Section 122(c) had preserved the right of corporations to compute their income for 1946 as if the excess profits tax law were still in effect, and if the computation showed a credit, to carry that credit back to 1945 or 1944 and obtain refunds of taxes paid for those years.

■■ The purpose of the excess profits tax law was, of course, to absorb by taxation most of any abnormal profits which the stimulation of business by the war might bring to corporations. Excess profits were those in excess of the average profits of certain prewar years, and in excess of a specified return on invested capital. But, in order to prevent the undue hardship which might result from taking by taxation practically all abnormal profits while maintenance and upkeep expenses were having to be deferred because of shortages and wartime restrictions, leaving plants run down and no reserves to restore them, Congress in 1942 enacted Section 710(c) (3) (A) of the Internal Revenue Code, 26 U.S. C.A. § 710(c) (3) (A), providing for the carry-back of any unused excess profits tax credit to cancel out excess profits taxes incurred for the two preceding years. This meant, as we understand it, that if a corporation having had excess profits in a given year, in a later year had less than normal profits, measured by the prewar standard formula, it could carry this deficiency in profits back to balance its excess profits for one or both of the two preceding years. When, in 1945, Congress repealed the excess profits tax law, it thought that it was fair to continue, for the year 1946, the averaging out process embodied in the carry-back provision, so it left that provision in effect for the year 1946.

■ Looking at the purpose of the carry-back provision, it would seem that the plaintiff should not have the benefit of it. The reason that the plaintiff's profits fell off in 1946 was, not that it had excessive charges for deferred maintenance, or that business was bad, but because it went out of its profitable business and put its money in the bank. The Tax Court, in two interesting decisions sought to give effect to what it found to be the purpose of the law. In Wier Long Leaf Lumber Company v. Commissioner, 9 T.C. 990, 999, it denied excess profits carry-back to a corporation that was in liquidation. In Mesaba-Cliffs Mining Company v. Commissioner, 10 T.C. 1010, it denied the comparable carry-forward privilege to a corporation which voluntarily changed its practice from that of selling to its stockholders at cost, and thus having no profits, to charging them a price which gave it an excess profit, in order to get the advantage of another provision of the excess profits tax law. But both these decisions were reversed on appeal, the Wier case by the Court of Appeals for the Fifth Circuit, 173 F.2d 549, and the Mesaba-Cliffs case by the Court of Appeals for the Sixth Circuit, 174 F.2d 857. In both cases the courts held that the statute was so plain and unambiguous in giving the privilege claimed to the "taxpayer" and the "corporation," that it was not permissible to go behind the words of the statute and restrict its meaning to some narrower purpose than its words expressed.

The plaintiff's contention does not seem logical. How a corporation which was, in 1946, not even of the kind that would have

had an excess profits tax to pay if it had made an excess profit, and if the excess profits tax had still been in effect, could somehow develop an unused excess profits tax credit, is hard to understand. The saving provision in the 1945 repeal of the excess profits tax statute, allowing corporations to compute their excess profits tax status, not for the purpose of paying a tax, but for the purpose of obtaining a refund of taxes formerly paid, involved one hypothetical computation. But the plaintiff's claim requires the imposition of one hypothesis upon another. If, however, the statutes give the plaintiff the privilege it claims, the lack of logic need not defeat its claim.

The plaintiff claims that it is covered by the language of the statutes relating to excess profits credits. It points to Sections 712, 713, and 714 of the Internal Revenue Code, 26 U.S.C.A. §§ 712–714. Section 712 says, in part: "In the case of a domestic corporation which was in existence before January 1, 1940, the excess profits credit for any taxable year shall be an amount computed under section 713 or section 714 * * *."

■ Sections 713 and 714 contain nothing more helpful. We think that the mere fact that in a statute relating to excess profits credits there is a reference to domestic corporations, does not show a statutory intention to allow every domestic corporation, whatever its nature and taxable status, to have an excess profits credit. We think that the natural meaning of such language is that domestic corporations which are covered by the excess profits tax law shall have excess profits credits.

The plaintiff points to Section 276(d) (2) of the Internal Revenue Code inserted in 1945, 26 U.S.C.A. § 276(d) (2), as indicating that Congress meant that a personal holding company might have the carry-back privilege. When a carry-back was applied for, not only credits against excess profits taxes but deficiencies in income taxes might develop, because of the reshuffling caused by the reduction of the excess profits income. In order to make sure that such deficiencies would not escape assessment Congress specified the periods within which they might be assessed. In Section 276(d) (2) it provided: "(2) in case a return was not required under subchapter E of chapter 2 for the taxable year of the net operating loss or unused excess profits credit resulting in the carry-back, at any time before the expiration of the period within which (under section 275 or subsection (a) or (b) of this section) a deficiency (with respect to tax imposed either by chapter 1 or by subchapter A or B of chapter 2) for such taxable year (whichever is the longer period) may be assessed." The reference to deficiencies "with respect to tax imposed * * * by subchapter A * * * of chapter 2" is a reference to those sections of the statutes imposing income taxes on personal holding companies. The plaintiff says that this reference would be meaningless unless Congress contemplated that such corporations were intended to have the carry-back privilege, since it is only in connection with the carry-back operation that the possible deficiencies covered by Section 276(d) (2) arise. We think that this is a weighty argument for the plaintiff's position. The Government has offered no answer to it. We can only say that it does not persuade us that a type of corporation such as the plaintiff was, which type was and always had been expressly exempted from the excess profits tax law, should have the privilege of computing a hypothetical excess profits credit merely for the purpose of carrying it back to obtain a refund.

In the case of Coca-Cola Bottling Company of Sacramento v. Commissioner, 17 T.C. 101, No. 14 decided July 31, 1951, the Tax Court held, without discussion, as we hold.

The plaintiff's petition will be dismissed. It is so ordered.

JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, JJ., concur.