COMMISSIONER OF INTERNAL REVE-
NUE v. AMBROSE.

No. 230, Docket 22606.

United States Court of Appeals
Second Circuit.

Argued May 12, 1953.

Decided June 4, 1953.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott and Fred E. Youngman, Sp. Assts. to the Atty. Gen., for petitioner.

Harry Silverson, New York City, for respondent; Silverson & Allison and Frederick Gelberg, New York City, of counsel.

Before SWAN, Chief Judge, and L. HAND and FRANK, Circuit Judges.

SWAN, Chief Judge.

The question presented by this appeal is whether the respondent taxpayer is entitled under section 124(d) of the Internal Revenue Code, 26 U.S.C.A., to have his 1943 income tax recomputed with respect to the amortization deduction of an "emergency facility."

The facts were stipulated. The taxpayer acquired the "emergency facility" in January 1943. By virtue of § 124(a) and (b) he was entitled, at his election, to amortize its cost over a period of 60 months starting February 1, 1943. He did so elect and claimed such amortization in his tax returns for 1943 and 1944. By presidential proclamation the emergency period came to an end on September 30, 1945, and the taxpayer elected, pursuant to § 124(d), to terminate the amortization period as of that date. He requested a recomputation of the amortization taken in his 1943 tax return

on the basis of a 32 month period instead of a 60 month period. The Commissioner denied it because the taxpayer no longer owned the "facility," title having passed by condemnation to the United States on June 7, 1945. The Tax Court, with four judges dissenting, granted the recomputation. The Commissioner has appealed.

We think the decision correct. The purpose of § 124 was to allow a taxpayer who acquired a wartime "facility" to amortize his investment at a different rate from that prescribed for the amortization of an ordinary capital investment. Congress recognized that such investments would lose their income-producing value when the war stopped; consequently it set up a conjectural amortization period of 60 months, but provided that if the war ended earlier the annual amortization deduction should be based on the shortened period during which the "facility" was in war use. Hence, if the taxpayer owned the "facility" for the whole of the shortened period, he could deduct the whole of the "adjusted basis" of the "facility," just as he would have been able to do during 60 months, if the period had not been shortened. Whatever the period, at its end the "facility" would have a "basis" of zero for the purpose of figuring gain, when thereafter it should be sold or otherwise disposed of.[1] Since paragraph (d) of section 124 gave the taxpayer the privilege of recomputing his amortization deduction on the basis of the shortened period, we cannot understand the argument which seeks to forfeit this privilege because he sold before the emergency period had been shortened. As the court noted in Ken-Rad Tube & Lamp Corp. v. Commissioner, 6 Cir., 180 F.2d 940, 942, the statute "contains no limitation requiring the taxpayer to own the property at the end of the emergency period." In that case the taxpayer made a sale of the "facility"; but we see no significant difference between a sale and a transfer of title resulting from condemnation. We agree

with the Ken-Rad case and with the decision of the Tax Court in the case at bar. The decision is affirmed.

---

1. Prior to enactment of § 117(g) (3) of the Revenue Act of 1950, the taxpayer's gain, when he sold, would be taxed at the rate applicable to capital gains. That section changed the law as to "emergency facilities," making any gains on them taxable as ordinary income, so far as their "basis" had been reduced by amortization deductions.