The SUNSWICK CORPORATION, Plaintiff,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
Feb. 14, 1958.

Spencer & Iserman, New York City (Richard H. Tunstead, New York City, of counsel), for plaintiff.

Paul W. Williams, U. S. Atty., for S. D. New York, New York City (Joseph DeFranco, Asst. U. S. Atty., New York City, of counsel), for defendant.

CASHIN, District Judge.

This is an action for refund of taxes allegedly overpaid for the fiscal year ending June 30, 1943, by Subway Construction Corporation (Subway). Plaintiff, The Sunswick Corporation, is the successor by merger to Subway and sues only by virtue of rights derived from Subway.

The taxpayer demands judgment in the amount of $34,509.91 made up of $23,081.61 income taxes, declared value excess profits taxes and excess profits taxes for the fiscal year ending June 30, 1943 assessed by the Internal Revenue Service and paid under protest on February 6, 1951, and $11,428.30 interest on the assessments paid on November 1, 1951.

The additional assessments resulted from the disallowance of a claimed bad debt deduction of $9,366.63 and the disallowance of a claimed unused excess profits tax credit of $75,221.42 allegedly accrued in fiscal years ending June 30, 1941 ($32,770.26) and June 30, 1942 ($42,451.16).

The facts relevant to the claim of a bad debt deduction may be summarized as follows:-

Subway was organized in 1929 for the purpose of engaging in the construction of subways. In 1931 Subway caused to be organized the Pretest Construction Corporation (Pretest) merely for the purpose of preserving the right to use the name "Pretest". Subway was the sole stockholder of Pretest and both corporations had common officers and directors. The records of Pretest were not available at the trial. However, from the books of account of Subway, relevant portions of which were introduced into evidence, and from the testimony of the accountant for Subway, it appears that

Pretest was not capitalized until January 23, 1933 and then only to the extent of $300.00. Shortly thereafter, on January 23, 1933 and on May 4, 1933, the amounts of $10,000 and $53,000 were advanced to Pretest by Subway for the purpose of enabling Pretest to engage in the business of purchasing and selling bank stocks. These advances were listed in the books of Subway as "Notes Receivable". Pretest did, in fact, enter into the business of speculating in bank stocks. The evidence further indicates that payments were made from Pretest to Subway as follows:-

| | |
|---|---|
| January 2, 1934 | $ 1,000.00 |
| July 14, 1934 | 1,000.00 |
| April 4, 1935 | 1,500.00 |
| January 7, 1936 | 1,000.00 |
| July 1, 1936 | 1,000.00 |
| April 7, 1937 | 24,000.00 |
| April 3, 1939 | 1,200.00 |
| April 25, 1941 | 5,137.30 |
| October 4, 1941 | 500.00 |
| March 14, 1942 | 23,100.00 |
| March 25, 1943 | 1,246.07 |

All of these payments were not, however, in liquidation of the alleged indebtness contracted in 1943. Some payments would be attributable to dividends declared by Pretest as follows:-

| | |
|---|---|
| June 30, 1938 | $1,200.00 |
| June 30, 1939 | 1,950.00 |
| June 30, 1940 | 1,800.00 |
| June 30, 1941 | 2,100.00 |

There is also some evidence of interest payments having been made on May 4, 1933 in the amount of $728.25, and on August 2, 1941 of $786.75. On June 16, 1943 Pretest was dissolved and on June 28, 1943 Subway wrote off the amount remaining on its account with Pretest of $9,366.63.

 To be successful in this portion of its action, plaintiff has the burden of establishing that the advances made by Subway to Pretest were bona-fide loans rather than contributions to capital, and thus deductible as business bad debts under 1939 Internal Revenue Code § 23(k) (1), 26 U.S.C.A. § 23(k) (1).

Janeway v. Commissioner, 2 Cir., 1945, 147 F.2d 602; Dobkin v. Commissioner, 15 T.C. 31, affirmed, 2 Cir., 1951, 192 F. 2d 392; Matthiessen v. Commissioner, 2 Cir., 1952, 194 F.2d 659; Bair v. Commissioner, 2 Cir., 1952, 199 F.2d 589; Bachrach v. Commissioner, 18 T.C. 479, affirmed, 2 Cir., 1953, 205 F.2d 151; Reed v. Commissioner, 2 Cir., 1957, 242 F.2d 334. It is, of course, the intention at the time the transaction occurred which is essential (Matthiessen v. Commissioner, supra) and that intention is to be derived from all of the relevant facts. The denomination of the transaction in the books of the parties thereto is not controlling. In this case there was an utter failure of proof on this vital issue. The purported notes were not produced at the trial nor did any witness even testify to the fact that he had seen the notes. There was no evidence whatsoever as to whether there were fixed maturity dates to the loans. No evidence was adduced as to what interest was borne. It appears positively, however, that interest payments were not made periodically. When viewed in the light of the fact that so-called debt-equity ratio was outlandishly disproportionate (210/1) the conclusion is compelled that the original intention was to create a stockholder-corporation rather than a creditor-debtor relationship. Accordingly, the $9,366.63 loss sustained on the books of Subway at the dissolution of Pretest is not available as a deduction or a business bad debt.

 The question presented by the taxpayer's claim for refund because of the disallowance of a claimed unused excess profits tax credit is one merely of law. It is undisputed that for the fiscal years ending June 30, 1941 and June 30, 1942, Subway was a personal holding corporation and filed returns as such. It is also undisputed that had Subway been an operating corporation for those years it would have been entitled to the credit in the amount claimed. The sole question presented, therefore, is whether under Sections 710 and 727 of Title 26 U.S.Code, 54 Stat. 975, 26 U.S.C.A. Ex-

cess Profits Taxes, §§ 710, 727, repealed 59 Stat. 568, a personal holding company, which is exempt from the imposition of an excess profits tax, may nevertheless accrue credits which it may later take advantage of when it becomes an operating company and thus subject to the imposition of the tax. While there appears to be no authority directly in point, the cases considering similar problems are in favor of the Government. Thus, in Aluminum Products Co. v. United States, 1951, 101 F.Supp. 373, 121 Ct.Cl. 187, an operating corporation which subsequently became a holding corporation was denied a refund of excess profits taxes paid during its life as an operating corporation because of a claimed carry-back of credits obtained in its altered status as a holding company. To like effect is American Valve Co. v. United States, D.C.S.D.N.Y.1956, 137 F. Supp. 249. Reason also seems to support the Government's position. It is the clear statutory scheme that unusually high profits obtained during emergency periods should be to an extent recouped by the Government. However, lean years are to be offset against bountiful ones, whether the lean years precede or succeed those which are bountiful. When, however, there is no possibility of a confiscation of profits because a corporation is exempt as a personal holding company, there can be obtained no "phantom" credits for carrying over or carrying back to a period when the corporation is subject to the excess profits tax.

Stanton Brewery, Inc., v. Commissioner, 2 Cir., 1949, 176 F.2d 573, does not hold to the contrary. A careful reading of that case and the record on appeal reveals that the only issue considered and decided by the Court of Appeals was whether, where an operating company and a personal holding company merged and continued in existence as an operating company, the resulting corporation could take advantage of an unused excess profits tax credit previously accrued by the operating corporation. This issue was decided in favor of the taxpayer, but obviously cannot be authority for the position taken by the present plaintiff.

Plaintiff also seeks to take advantage of the fact that the Excess Profits Tax Act in effect during the Korean emergency, specifically negated the possibility of an unused excess profits credit coming into existence during a period which the taxpayer was exempt from payment of the tax, while the previous law, applicable to this case, had no such specific negation. However, merely because subsequent legislation is more artfully drawn than its predecessor, cannot, in my opinion, impute to Congress an intention, in passing the prior legislation, to bring about the anomalous result contended for by plaintiff.

The Clerk is directed to enter judgment dismissing the complaint with costs to defendant.