**H. A. BRODY CORP., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 2-455.**

United States District Court
S. D. Iowa,
Davenport Division.

Sept. 29, 1961.

Edward A. Doerr, Davenport, Iowa, for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Roy W. Meadows, U. S. Atty., Des Moines, Iowa, for defendant.

VAN PELT, District Judge.

This matter is before the court upon cross-motions for summary judgment. H. A. Brody Corp. brought the suit to recover internal revenue taxes alleged to have been wrongfully assessed and collected. There is presented a question of first impression calling for an interpretation of § 432(e) of the Excess Profits Tax Act of 1950, 26 U.S.C.A. §§ 430–474, 1939 Internal Revenue Code.

H. A. Brody Corp. is a successor to a corporation named Davenshire, Incorporated (hereinafter referred to as taxpayer). Taxpayer during the fiscal year ended Nov. 30, 1951 manufactured women's slacks and continued to do so until May 31, 1952. On the latter date taxpayer sold all its operating assets to Davenshire Co., a partnership. Taxpayer, however, retained its corporate existence. During the latter half of the fiscal year in which the sale of the assets was made, to-wit, June 1, 1952 to Nov. 30, 1952,

taxpayer's only income consisted of interest on a note received from the Davenshire Co. as a part of the sale price of the assets and interest on certain United States Treasury certificates which it held. During this period taxpayer would have been properly classified as a personal holding company under provisions of the Internal Revenue Code because of the nature of its income and the manner in which its outstanding stock was held if such period had constituted a taxable year. Subsequently it has been so classified. However, for the full fiscal year ending Nov. 30, 1952 taxpayer was not taxable as a personal holding company.

Under the Excess Profits Tax Act of 1950 higher tax rates were applied to those corporate profits attributable to the Korean conflict. To determine which profits were "excess profits" one method of computation provided was the "average base period net income" method. A base period covering certain pre-war years was selected and the average earnings during the base period were used as a credit during years in which the excess profits tax was in effect and earnings over the amount of this credit were subject to the excess profits tax. The "carry-back" provision of the act provided that if this credit were unused during a fiscal year it could be carried back to the previous fiscal year to reduce the amount of excess profits for such previous year.

Following the average base period net income method taxpayer's credit for its fiscal year ending Nov. 30, 1952 was $125,627.69. Of this credit it is stipulated that $72,578.04 was properly applied against plaintiff's excess profits net income. The unused balance of such credit was $53,049.55. Plaintiff contends that this entire sum constitutes an excess profits credit carry-back to the year ending Nov. 30, 1951. It is defendant's contention that only $26,669.72 may be carried back. This sum is 184/366 of $53,049.55, a ratio derived from the number of days during which taxpayer engaged in the business of manufacturing ladies' slacks to the total number of days

of its fiscal year ending Nov. 30, 1952. Based on this computation by defendant, taxpayer was assessed for a tax deficiency which was paid with interest and which plaintiff now seeks to recover.

The statute involved is 26 U.S.C.A. 432(e) (1939 Internal Revenue Code):

"(e) Unused excess profits credit of year of liquidation. For any taxable year during which the taxpayer (1) completes the distribution of substantially all of its assets in liquidation, or (2) completes the conversion of substantially all of its assets into assets not held in good faith for the purposes of the business, then the unused excess profits credit for such year shall be an amount which is such part of the unused excess profits credit determined under the preceding provisions of this section as the number of days in the taxable year prior to the date of the completion (described in (1) or (2), whichever is earlier) is of the total number of days in the taxable year, and no part of the unused excess profits credit for such year shall be an unused excess profits credit carry-over for any succeeding taxable year."

It is the government's position that when taxpayer sold all its operating assets it completed the conversion of substantially all its assets into assets not held in good faith for the purposes of the business within the meaning of § 432(e) of the Internal Revenue Code of 1939. Plaintiff has reviewed the prior law in an attempt to persuade the court that this section is not applicable to the situation.

The World War II excess profits law did not contain a provision comparable to § 432(e) of the Korean act. There was, however, a good deal of argument about the availability of an unused credit for a carry-back when a corporation had liquidated, disposed of its assets, or changed the nature of its business. The case at bar presents for the first time the question of the proper interpretation of § 432(e).

When confronted with the interpretation of a statute the court's first duty is to read it in its ordinary and natural sense. If this approach fails to yield a satisfactory result, then only is there need to resort to legislative history and prior law. It can be noted here that clause (1) of 432(e) (dealing with distribution of assets in liquidation) is not in issue since a liquidation was not involved. Clause (2) of 432(e) is the one which the government urges is applicable. It speaks of "completion of conversion of substantially all its assets into assets not held in good faith for purposes of the business." The natural meaning of this clause is that if a corporation sells or otherwise disposes of the assets or substantially all of the assets of the business it is engaged in and receives in return assets which it does not hold for the purposes of the original business, then the section applies to limit the amount of carry-back for the year in which such transfer was made.

Under this view when taxpayer on May 31, 1952 sold all of the operating assets of its manufacturing business and received in return a note from the transferee which note was held by taxpayer as a holding company and was not held for purposes of the manufacturing business taxpayer had then completed "the conversion of substantially all of its assets into assets not held in good faith for the purposes of the business." The court thinks that the language of the statute is plain and unambiguous on this point.

However, since plaintiff has persuasively argued that this is an improper construction, the court will go behind the plain language of the statute to show that such construction properly upholds the purpose of the clause, insofar as that purpose can be ascertained.

Such a construction gives effect to the policy behind the carry-back. The purpose of the carry-back provision was to reduce, under certain circumstances, the income subject to the excess profits tax. By use of carry-back and carry-over provisions of one and five years respectively an averaging period of seven years was provided to avoid hardships to taxpayers who might otherwise be subjected to unfair tax loads due to fluctuations in income. The effect of this is that instead of determining the amount of excess profits tax due by reference to a single year, the amount of income subjected to such tax was averaged over a period of years.[1] A comment on the purpose and function of the World War II excess profits tax law, and of its carry-back provisions was made in Aluminum Products Co. v. United States, 1951, 101 F. Supp. 373, 375, 121 Ct.Cl. 187.

"The purpose of the excess profits tax law was, of course, to absorb by taxation most of any abnormal profits which the stimulation of business by the war might bring to corporations. Excess profits were those in excess of the average profits of certain prewar years, and in excess of a specified return on invested capital. But, in order to prevent the undue hardship which might result from taking by taxation practically all abnormal profits while maintenance and upkeep expenses were having to be deferred because of shortages and wartime restrictions, leaving plants run down and no reserves to restore them, Congress in 1942 enacted Section 710(c) (3) (A) of the Internal Revenue Code, 26 U.S.C.A. § 710(c) (3) (A), providing for the carry-back of any unused excess profit tax credit to cancel out excess profits taxes incurred for the two preceding years. This meant, as we understand it, that if a corporation having had excess profits in a given year, in a later year had less than normal profits, measured by the prewar standard formula, it could carry this deficiency in profits back

1. For a general discussion of the purpose of carry-back and carry-over provisions, see Raum, "Carry-Overs and Carry-Backs in Connection with the Liquidation or Sale of a Business," 49 Colum.L.Rev. 50, (1949), pp. 53–54.

to balance its excess profits for one or both of the two preceding years."

These observations also appropriately describe the rationale of the Korean statute under consideration.

The Excess Profits Tax Act of 1950, was adopted Jan. 3, 1951.[2] That, as noted above, its general objective was similar to that of the World War II statute can be seen by an examination of the legislative history.[3] Again the basic purpose was to impose greater tax rates upon corporate profits realized because of the war and increased military spending.

In the Aluminum Products case, supra, it was held that a taxpayer which became a personal holding company in 1946 and therefore exempt from excess profits tax for 1946, could not carry back a hypothetical excess profit tax credit for 1946 to cancel excess profit tax paid for 1944. The court's reasoning in denying the carry-back is pertinent here.

"Looking at the purpose of the carry-back provision, it would seem that the plaintiff should not have the benefit of it. The reason that the plaintiff's profits fell off in 1946 was, not that it had excessive charges for deferred maintenance, or that business was bad, but because it went out of its profitable business and put its money in the bank." 101 F.Supp. at pages 373, 375.

Similarly, the reason taxpayer had a large unused credit was because it went out of the profitable business of manufacturing ladies' slacks. During the first six months of the fiscal year ended Nov. 30, 1952 taxpayer had gross profit on sales of $219,658.83. After the sale of its assets its income for the last six months of that fiscal year was $9,381. To allow the unused credit for the entire year to be carried back to the previous year would be to allow taxpayer a substantial reduction in the excess profits taxes it had paid for the previous year. This would not be fulfilling the purpose of the carry-back provision of protecting the taxpayer from an unfair tax load due to a fluctuation in its profits. Rather, it would allow taxpayer a windfall. Giving the act its literal meaning affords a result which does not in any way thwart the purposes of the carry-back provisions.

Plaintiff argues that enactment of the clause under consideration must have been done for the purpose of overruling a line of decisions [4] decided under prior law which held in essence that the de facto dissolution doctrine [5] (disallowing carry-backs from a period before which the corporation had been de facto dissolved) would not be applied in cases where no formal dissolution had occurred and some minimal business function persisted. Assuming with taxpayer that this was the intent of Congress (although the legislative history is barren on this point) it seems to the court that this is precisely the state of facts found here and that denial of the carry-back will effectively implement such Congressional intent.

But taxpayer goes on to say that to take the position that "the business" referred to in clause (2) of section 432(e) is limited in application to the same business as that in which excess profits were earned in the year to which the carry-

2. For a brief survey of the provisions of the act, see CCH Excess Profits Tax Rep. (3rd ed.) paras. 50,002–50,004.

3. 1950 United States Code Congressional Service, p. 4027 et seq. An informative discussion of the legislative history of both the World War II and the Korean acts can be found in 7A Mertens, Federal Income Taxation § 42.02.

4. Plaintiff has cited the following decisions as illustrative of the doctrine: Commis-

sioner of Internal Revenue v. Allegheny Broadcasting Corp., 3 Cir., 179 F.2d 844; Union Bus Terminal, Inc. 12 T.C. 197; United States v. Kingman, Jr., 5 Cir., 170 F.2d 408.

5. The leading case on the de facto dissolution doctrine is Wier Long Leaf Lumber Co. v. Commissioner, 5 Cir., 1949, 173 F.2d 549.

back runs is to say that the statute reverses the principle that carry-backs are allowable even though a change in the kind of business carried on occurs before the year from which the carry-back is made.[6] If such a result had been intended, taxpayer urges, it would have been spelled out more clearly.

This argument by taxpayer may indeed expose a weakness in the drafting of the statute. In enacting clause (2) to prohibit carry-backs under certain circumstances Congress may have unwittingly foreclosed carry-backs in cases where a change in the nature of the business has occurred. But the rule applies that "if Congress has made a choice of language which fairly brings a given situation within a statute, it is unimportant that the particular application may not have been contemplated by the legislators." Burge v. Commissioner, 4 Cir., 1958, 253 F.2d 765, 769, 74 A.L.R. 2d 664 and cases there cited. When it appears, as here, that the transaction falls within the wording of the statute the court cannot impose upon the plain language its own idea of what Congress *must* have meant. It presumes that the statute means what it says. Sale of its operating assets by the taxpayer in return for a note was a "conversion of substantially all of its assets into assets not held in good faith for the purpose of the business." This holding gives effect to the terms of the statute, the rationale of the carry-back scheme, and the legislative purpose of enacting the clause which taxpayer has advanced.

Plaintiff strives hard to convince the court that the true nature of the transaction was merely a change in the nature of the business. To be sure, that is an effect of the transaction. But in its essential nature it was the sale of a business—a disposition of corporate assets with a minimal business function retained. Under such circumstances, even if it were accurate to say that Congress

did not intend to preclude carry-backs when only the nature of the business had been changed (a point upon which the court does not pass), the statute must be held to apply.

For the foregoing reasons, plaintiff is not entitled to recover the taxes it has paid, and its complaint must be dismissed, and the government's motion for summary judgment must be granted, it appearing that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law.

A separate order is being entered.

---

6. Plaintiff has cited the following cases as illustrative of the doctrine: Whitney Manufacturing Company, 14 T.C. 1217; Coca Cola Bottling Co. of Sacramento Ltd. (Supplemental Opinion), 19 T.C. 282; Mesaba-Cliffs Mining Co. v. Commissioner, 6 Cir., 174 F.2d 857.